UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

DR. BENJAMIN BALLOUT, an individual

domiciled in the State of Michigan,

residing at 885 Penniman Ave, Suite

#5421,

Plymouth, Michigan 48170,

Plaintiffs,

v.

BLOOMBERG L.P., a Delaware limited

partnership, serving the United States

and Michigan markets,

BLOOMBERG FINANCE L.P.,

a Delaware limited

partnership, BLOOMBERG

INDUSTRY GROUP

Case: 4:25−cv−13879
Assigned To : Kumar, Shalina D.
Referral Judge: Altman, Kimberly G.
Assign. Date : 12/1/2025
Description: CMP BALLOUT v
BLOOMBERG L.P. ET AL (JP)

Civil Action No.: _____

Hon. _____

(doing business as BLOOMBERG

LAW), a Delaware corporation,


BLOOMBERG NEWS, a publication division of Bloomberg L.P.,


MARTINA BARASH, an individual employed as a journalist by Bloomberg Law,


ANDREW HARRIS, an individual employed as

an editor by Bloomberg Law,


and


JOHN DOES 1–10,

corporate officers, editors, publishers, supervisors,

content approvers, and decision-makers of

Bloomberg whose identities are presently

unknown,


Defendants.

_____/


**COMPLAINT AND JURY DEMAND**

_____/

Plaintiff Dr. Benjamin Ballout ("Plaintiff"), by and through himself pro se, brings this action for Defamation Per Se, False Light, Business Defamation, Trade Libel, Tortious Interference with Business Expectancy, Negligence, Gross Negligence, Intentional Infliction of Emotional Distress, Civil Conspiracy, and Injunctive and Declaratory Relief against Bloomberg L.P., Bloomberg Finance L.P., Bloomberg Industry Group, Bloomberg News, journalist Martina Barash, editor Andrew Harris, and John Does 1–10.

**TABLE OF CONTENTS**

I.    Introduction ...................................................................... 1

II.   Parties ............................................................................. 3

III.  Jurisdiction and Venue .................................................... 5   IV.   Factual

      Background .......................................................... 7

V.    SEC Judgments and Procedural History ........................................ 15

VI.   Bloomberg's Publication and Conduct ........................................... 22

VII.  Defamatory Statements (Section 8) ................................................. 28

VIII. SEC Judgment vs. Bloomberg Article Comparison (Section 9) ...... 35

IX.   SEC Releases vs. Bloomberg Fabrications (Section 10) ................ 44

X.    Damages (Section 11) ...................................................... 52

XI.   Causes of Action (Section 12) ....................................................... 61

      Count I – Defamation Per Se

      Count II – False Light

      Count III – Business Defamation / Trade Libel

      Count IV – Tortious Interference

      Count V – Negligence

      Count VI – Gross Negligence

      Count VII – IIED

      Count VIII – Civil Conspiracy

      Count IX – Punitive Damages

      Count X – Injunctive Relief

      Count XI – Declaratory Relief

XII.   Prayer for Relief (Section 13) ...................................................... 85

XIII.   Jury Demand (Section 14) ........................................................... 88

XIV.   Signature Block (Section 15) ...................................................... 89

XV.   Exhibit Index (Section 16) ......................................................... 90   TABLE OF
AUTHORITIES

CASES

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) ................................. passim

Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) ......................................... 31

St. Amant v. Thompson, 390 U.S. 727 (1968) .............................................. 29

Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990) ..................................... 35

Hustler Magazine v. Falwell, 485 U.S. 46 (1988) ........................................ 67

Time, Inc. v. Hill, 385 U.S. 374 (1967) ......................................................... 71

Philadelphia Newspapers v. Hepps, 475 U.S. 767 (1986) .......................... 41

Smith v. Anonymous Joint Enterprise, 793 F.3d 902 (8th Cir. 2015) ........... 56   Tomkiewicz v.
Detroit News, Inc., 635 N.W.2d 36 (Mich. Ct. App. 2001) ... 48

Kevorkian v. American Medical Ass'n, 602 N.W.2d 233 (Mich. Ct. App. 1999) ... 52

Ledsinger v. Burmeister, 318 N.W.2d 558 (Mich. Ct. App. 1982) ............... 44

Dalley v. Dykema Gossett, 287 Mich. App. 296 (2010) ............................... 59

Mitan v. Campbell, 706 N.W.2d 420 (Mich. Ct. App. 2005) ........................ 63

STATUTES

28 U.S.C. § 1332 (Diversity Jurisdiction) ...................................................... 5

28 U.S.C. § 1391 (Venue) ........................................................................... 6

28 U.S.C. § 2201–2202 (Declaratory Judgment Act) .................................... 82

Michigan Defamation Law .......................................................................... passim

RULES

Fed. R. Civ. P. 8 ........................................................................... 10

Fed. R. Civ. P. 9 ........................................................................... 11

Fed. R. Civ. P. 12 ......................................................................... 15

Fed. R. Civ. P. 38 (Right to Jury Trial) ......................................... 88

Fed. R. Civ. P. 65 (Injunctive Relief) ............................................ 79

OTHER AUTHORITIES

SEC Litigation Release No. 26331 (June 20, 2025) ...................................... 44

SEC Final Judgments (Docs 48–51) ............................................. 15

Bankruptcy Court Orders (EDMI, Ch. 7 Reopening) .................................... 18

Bloomberg Industry Group Internal Standards (if referenced) ..................... 24

**I. INTRODUCTION**

1.  This action arises from one of the most **egregious, reckless**, and materially

    **false publications** issued by a major international financial news organization

    in recent years. On or about June 12, 2025, Defendants Bloomberg L.P.,

    Bloomberg Finance L.P., Bloomberg Industry Group (Bloomberg Law),

    Bloomberg News, and their agents, including journalist Martina Barash and

    editor Andrew Harris, published and disseminated an article titled "Fake

    Energy Company Stock Scheme Yields Civil Penalties to SEC" ("the Article"),

    which defamed Plaintiff Dr. Benjamin Ballout ("Plaintiff") and his affiliated

    entities, Diplomatic Trade Ltd, Diplomatic Trade Capital, and Thoor.org

    (collectively "Plaintiffs"), on a global scale.

2.  The **Article falsely** declared Plaintiff's former publicly traded company,

    Enerkon Solar International Inc., to be a "**fake energy company**," despite the

    undisputed fact that Enerkon was a real, operating, OTC-listed public issuer,

    registered on OTC Markets, reviewed by FINRA, monitored by OTC Markets

    Group, regulated under SEC reporting regimes, and recognized as a

    legitimate publicly traded corporation for multiple years. **No court,**

**regulator, agency, or tribunal has ever called Enerkon "fake." This term was fabricated entirely by Bloomberg and constitutes a textbook example of defamation per se.**

3.  Worse, Bloomberg **knowingly and deliberately mischaracterized** a limited, non-final civil judgment issued in a Securities and Exchange Commission ("SEC") case as if it were a definitive finding of **criminal fraud and guilt.**

    Bloomberg titled the Article to imply a criminal "scheme," "fraud," "forgery," and "fake company operation," even though the SEC case was purely civil in nature, no jury trial occurred, no criminal case existed, and no factual findings were adjudicated by any trier of fact. **Bloomberg's publication converted disputed civil allegations into final criminal conclusions.**

4.  At the time Bloomberg published the Article, **ONLY ONE DAY after the SEC released the summary judgment**, WHEREAS; was not only civil and obtained without trial but was also subject to further judicial review. Plaintiff exercised his lawful rights and filed an immediate appeal within the permitted time

under the Federal Rules of Appellate Procedure. Bloomberg failed to disclose

— and indeed **concealed — that the judgment was under appeal, non-final,**

**legally contestable, and procedurally vulnerable.**

5.   Moreover, the Bankruptcy Court for the Eastern District of Michigan has

since **reopened Plaintiff's Chapter 7 bankruptcy** case to **examine** whether

the <u>SEC's pursuit and enforcement of penalties violated Plaintiff's discharge</u>

<u>injunction and other protections under the United States Bankruptcy Code.</u>

**This reopening demonstrates the unsettled, non-final, and legally**

**questionable nature of the SEC judgment that Bloomberg deceptively**

**portrayed as a final adjudication of criminal wrongdoing.**

6.   Bloomberg's defamatory **publication was not a mere mistake or**

**misunderstanding.** It **was executed with actual malice.** Bloomberg

is one of the world's largest and most sophisticated financial-news

conglomerates, with thousands of employees, attorneys, editors, compliance

officers, and standards personnel. **Bloomberg has strict internal journalistic**

and **legal guidelines requiring accuracy, fact-checking, neutrality, and**

verification — all of which **were blatantly violated.** Defendants published

statements they **knew to be false, or, at the very least, acted with reckless**

**disregard for their truth,** omitting critical judicial context and fabricating

criminal implications that did not and do not exist.

7. Bloomberg **also failed to contact Plaintiff for comment prior to publication,**

despite the defamatory nature of the statements and standard journalistic

practice. <u>Bloomberg's failure to engage in even minimal fact</u>

<u>checking, coupled with the sensationalistic, accusatory, and</u>

<u>inflammatory language of the Article, establishes the presence of</u>

<u>actual malice and reckless disregard for accuracy.</u>

8. As a result of Defendants' conduct, Plaintiffs suffered catastrophic damages.

Dr. Ballout is a global investor, diplomatic negotiator, international business

consultant, and Chairman of several multinational ventures. His reputation is

critical to his ability to negotiate with governments, sovereign funds, major

corporations, investors, and international institutions. Bloomberg's

defamatory Article — published to an audience of millions, including government ministries, financial institutions, investment banks, sovereign wealth funds, regulators, and foreign dignitaries — destroyed ongoing and prospective deals, severed business relationships, disrupted negotiations, damaged trust with international partners, and inflicted enormous reputational harm.

9. Plaintiffs' damages exceed $1 billion including **market entry** and more. This includes lost business opportunities, lost investment commitments, interference with high-level diplomatic projects, damage to global credibility, loss of governmental and institutional trust, substantial emotional distress, and long-term professional harm. Plaintiffs pursue this action to restore their reputations, obtain redress for the reckless wrongdoing committed by Defendants, and ensure the removal and correction of Bloomberg's defamatory material.

10. **Bloomberg is legally responsible for every harmful word it published.** The corporate entities — Bloomberg L.P., Bloomberg Finance

L.P., and Bloomberg Industry Group —    jointly operate, fund, manage, approve, distribute, and **profit from the publication** of Bloomberg News and Bloomberg Law content. Their journalists, editors, supervisors, and corporate executives participated directly or indirectly in the creation, approval, and dissemination of the Article. Defendants John Does 1–10 are unknown individuals within Bloomberg's internal hierarchy responsible for drafting, editing, approving, publishing, or supervising the Article.

11. Plaintiffs bring this legal action to hold Defendants accountable for their defamatory conduct, their reckless disregard for the truth, their malicious portrayal of Plaintiff as a criminal fraudster, and their publication of false statements that have severely and **permanently damaged Plaintiffs' reputations around the world**. Plaintiffs seek compensatory damages, special damages, consequential damages, punitive damages, declaratory relief, injunctive relief, attorney fees, costs, and all other relief this Court deems just and proper including removal of publication and its indexing permanently.

## II. PARTIES

A. **PLAINTIFFS**

12.     Plaintiff DR. BENJAMIN BALLOUT ("Plaintiff" or "Dr. Ballout") is an individual domiciled in the State of Michigan, residing at 885 Penniman Avenue, Suite #850, Plymouth, Michigan 48170. Plaintiff is a global investor, international business negotiator, corporate executive, and founder of several multinational ventures operating in the United States, Europe, the Middle East, North Africa, and Asia. Plaintiff's reputation, integrity, and credibility are fundamental assets required in his professional dealings with sovereign governments, regulators, financial institutions, investors, and global commercial partners.

**Bloomberg's defamatory publication directly targeted and severely damaged these essential professional attributes.**

13.     Plaintiff is the Chairman and Chief Executive Officer of Diplomatic Trade Ltd, an international advisory, investment, and trade-facilitation entity engaged in government relations, infrastructure diplomacy, cross-

border investments, emerging-market financial structures, and

international deal execution.

14.     Plaintiff is also the Chairman and Chief Executive Officer of

Diplomatic Trade Capital, a financial services and investment advisory

entity that focuses on international finance, cross-border capital

markets, sovereign advisory, and private investment transactions. The

reputation of Plaintiff and his related entities is critical to the success of

ongoing investment negotiations and government-level engagements.

17.   All Plaintiffs conduct business within the State of Michigan, maintain

clients and operations within this District, and suffered substantial injury

to their business, property, and reputations within the Eastern District of

Michigan as a direct and proximate result of Defendants' actions.

B. **DEFENDANTS**

18.  Defendant BLOOMBERG L.P. ("Bloomberg LP") is a Delaware limited partnership headquartered in New York City, New York. Bloomberg LP conducts extensive business throughout the United States and globally, including distributing news, financial products, and analytics to paying subscribers within the State of Michigan, this District, and Plymouth, Michigan. Bloomberg LP owns, controls, manages, and financially benefits from Bloomberg News and Bloomberg Law.

19.  Defendant BLOOMBERG FINANCE L.P. is a Delaware limited partnership affiliated with Bloomberg LP. Bloomberg Finance L.P. conducts substantial business within the Eastern District of Michigan and is responsible for the financial infrastructure of Bloomberg's media operations, including the distribution of the defamatory Article published at issue in this Complaint.

20.  Defendant BLOOMBERG INDUSTRY GROUP, doing business as Bloomberg Law, is a Delaware corporation and the publisher

responsible for the Bloomberg Law platform on which the defamatory Article was created, published, advertised, and disseminated. Bloomberg Law maintains paying clients and subscribers within Michigan, including government offices, financial institutions, attorneys, corporate executives, and commercial enterprises.

21. Defendant BLOOMBERG NEWS is the news publishing division of Bloomberg LP. Bloomberg News produces, edits, approves, publishes, and globally disseminates financial news, business content, and market-moving reporting. Bloomberg News directly published and distributed the defamatory Article described herein.

22. Defendant MARTINA BARASH ("Barash") is an individual journalist employed by Bloomberg Industry Group and Bloomberg Law. Upon information and belief, Barash resides in the State of New York or the District of Columbia. Barash is the author of the defamatory Article. She acted within the scope of her employment with

Bloomberg and is responsible for fabricating, drafting, publishing, or causing the publication of provably false, defamatory statements concerning Plaintiffs.

23. Defendant ANDREW HARRIS ("Harris") is an individual employed as an editor by Bloomberg Industry Group and Bloomberg Law. Upon information and belief, Harris resides in the State of New York or the District of Columbia. Harris approved, supervised, or materially contributed to the publication of the defamatory Article. As an editor, Harris bears responsibility for the content published, the accuracy of the statements, the inclusion or omission of critical facts, and the defamatory narrative disseminated by Bloomberg.

24. Defendants JOHN DOE 1 through JOHN DOE 10 are currently unknown individuals within Bloomberg LP, Bloomberg Finance L.P., Bloomberg Industry Group, Bloomberg News, or any affiliated Bloomberg entity who participated in the drafting, reviewing, approving, editing, publishing, distributing, or setting editorial

direction for the defamatory Article. These include, but are not limited to: senior editors, managing editors, content supervisors, legal reviewers, executive management, newsroom standards officers, fact-checking        personnel, and any other agents who contributed to or approved the publication of the Article.

25.  Plaintiffs will amend this Complaint to substitute the actual names of these John Doe Defendants once they are identified through discovery, including through subpoenas directed to Bloomberg LP and affiliated entities.

26.  At all relevant times, each Defendant acted as the agent, servant, employee, joint-venturer, and/or co-conspirator of the other Defendants, and all actions taken by each Defendant were undertaken within the course and scope of their respective agency or employment with Bloomberg.

27. Defendants jointly published, approved, distributed, monetized, and benefited from the defamatory Article that forms the basis of this action.

28. Defendants have sufficient minimum contacts with the State of Michigan and this District to satisfy constitutional due process requirements and to render the exercise of personal jurisdiction proper under Michigan's long-arm statute.

## III. JURISDICTION AND VENUE

A. **SUBJECT MATTER JURISDICTION**

29. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction), because the amount in controversy exceeds $75,000 and the parties are citizens of different states. Plaintiff Dr. Benjamin Ballout is domiciled in the State of Michigan, and all Bloomberg Defendants are domiciled in or incorporated within

different states and jurisdictions, including Delaware, New York, and the

District of Columbia. The amount in controversy exceeds $1,000,000,000

(one billion dollars), exclusive of interest, costs, and attorney fees.

30.    This Court also has federal question jurisdiction pursuant to 28

U.S.C. § 1331, and 28 U.S.C. § 1337, because this matter involves federal

issues connected to the interpretation of federal law, including the

interplay between the United States Bankruptcy Code, the federal

discharge injunction, the automatic stay, and the SEC's civil enforcement

actions discussed in the defamatory Article. While Plaintiffs' claims are

primarily state-law tort claims, the underlying mischaracterization of

federal judgments, the omission of material federal appellate and

bankruptcy proceedings, and the federal regulatory context

surrounding the publication provide an additional independent basis for

federal question jurisdiction.

31.    This Court also has supplemental jurisdiction over all related state-

law claims pursuant to 28 U.S.C. § 1367(a), because all causes of action

arise from the same **nucleus of operative facts**: Bloomberg's publication,

approval, editing, and dissemination of a materially false and defamatory

Article concerning Plaintiff and his associated entities.

B. PERSONAL JURISDICTION OVER DEFENDANTS

32.   This Court has personal jurisdiction over all Defendants because each

Defendant has sufficient minimum contacts with the State of Michigan

and the Eastern District of Michigan, such that exercising personal

jurisdiction comports with traditional notions of fair play and substantial

justice under the Due Process Clause of the United States Constitution.

33.   Bloomberg L.P., Bloomberg Finance L.P., Bloomberg Industry Group,

and Bloomberg News regularly conduct, transact, solicit, and profit

from business within the State of Michigan. Bloomberg sells

subscription products, including Bloomberg News, Bloomberg Law,

Bloomberg Terminal data products, and financial analytics services to

paying customers in Michigan, including major automotive manufacturers, financial institutions, law firms, technology companies, investors, regulators, corporate entities, and governmental bodies.

34.  Bloomberg employs sales staff, maintains client relationships, and derives substantial recurring revenue from Michigan-based subscribers. Bloomberg directs publications, marketing, and news distribution into Michigan, knowing and intending that its publications—including the defamatory Article at issue—will be accessed, read, relied upon, and disseminated within this District.

35.  Bloomberg's online publications, including Bloomberg Law and Bloomberg News, **are intentionally distributed** to Michigan subscribers. Bloomberg's digital platforms are interactive commercial services, designed to target and engage Michigan-based governmental, legal, financial, and commercial users.

36. Defendants Barash and Harris are employees or agents of Bloomberg and, in publishing the Article, directed their defamatory statements into Michigan, knowing they would cause injury to a Michigan-domiciled Plaintiff. Under well-established law, the intentional publication of defamatory content about a forum resident subjects a defendant to personal jurisdiction in that forum.

37. Each corporate Defendant is vicariously liable for the actions of its employees and agents. Additionally, **each Defendant participated in a civil conspiracy to draft, approve, and disseminate defamatory statements about Plaintiff, and tortious acts committed in furtherance of that conspiracy occurred and caused substantial harm in this District.**

38. Accordingly, all Defendants are subject to personal jurisdiction in Michigan under the state's long-arm statute, MCL § 600.705 and MCL § 600.715, and the constitutional limits of due process.

C. **VENUE IN THE EASTERN DISTRICT OF MICHIGAN**

39.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Eastern District of Michigan, including the injury to Plaintiffs' reputation, business activities, commercial relationships, governmental negotiations, and prospective economic interests.

40.   Plaintiff Dr. Benjamin Ballout is domiciled in Plymouth, Michigan, within the Eastern District of Michigan. The defamatory Article was accessed, read, downloaded, and disseminated within this District. Bloomberg intended its publication to reach readers within Michigan, and it was reasonably foreseeable that the Article would cause harm within this District.

41.   Venue is also proper under 28 U.S.C. § 1391(b)(1) because one or more Defendants are subject to personal jurisdiction in this District.

42. Venue is also proper under 28 U.S.C. § 1391(b)(3) because no single District would otherwise be clearly superior, and Bloomberg conducts continuous and systematic business throughout the United States, including within Michigan.

43. Venue is further supported because Plaintiff's business interests and those of Diplomatic Trade Ltd, Diplomatic Trade Capital, and Thoor.org suffered substantial and quantifiable injury in Michigan, including interference with contractual relations, destroyed investment negotiations, damaged governmental relationships, reputational injury, lost business opportunities, and loss of economic expectancy.

44. Bloomberg's publication caused direct economic damage within the Eastern District of Michigan, including lost clients, lost professional opportunities, lost negotiations, and reputational harm that continues to this day. **Had Bloomberg not published the defamatory Article; these injuries would not have occurred in Michigan.**

D. **ADDITIONAL BASIS FOR VENUE AND JURISDICTION**

45. Bloomberg's article falsely and maliciously interpreted, summarized, and characterized federal judicial orders—including SEC civil judgments, a pending federal appeal, and a federal bankruptcy proceeding—matters which confer an additional nexus to federal jurisdiction.

46. Plaintiff's Chapter 7 bankruptcy case was reopened by the United States Bankruptcy Court for the Eastern District of Michigan, further linking the underlying events to this District. Bloomberg's publication omitted and misstated facts concerning these federal proceedings, resulting in additional injury within this District.

47. The Article's misrepresentations concerning federal court actions materially contributed to the reputational and economic harm suffered by Plaintiffs within Michigan, strengthening both jurisdiction and venue in this Court.

**IV. FACTUAL BACKGROUND**

A. **PLAINTIFF'S BACKGROUND AS A GLOBAL INVESTOR AND INTERNATIONAL BUSINESS FIGURE**

48.    Plaintiff Dr. Benjamin Ballout ("Plaintiff") is a well-established global investor, international business consultant, corporate executive, and diplomatic-level negotiator with significant professional operations spanning the United States, Europe, the Middle East, North Africa, and Asia. Plaintiff has built a decades-long career engaging sovereign governments, international institutions, public companies, private investors, infrastructure groups, technology ventures, and high-level public and private sector stakeholders.

49.    Plaintiff has participated in and led transactions, advisory engagements, and investment initiatives valued in the hundreds of millions of dollars. His reputation for integrity, leadership, discretion, and global commercial acumen is indispensable for the success of his business model, which relies on credibility and trust at the highest levels of government, finance, and international commerce.

50.     Plaintiff is the Chairman and CEO of Diplomatic Trade Ltd, Diplomatic Trade Capital, and Thoor.org. These entities engage in global investment advisory, infrastructure diplomacy, emerging-market project financing, international technology strategy, and sovereign financial negotiations. The reputation of Plaintiff and the goodwill of these entities are inextricably intertwined.

51.     Plaintiff's professional identity is rooted in cross-border negotiation, high-stakes deal management, policy-level financial guidance, and complex strategic partnerships. These roles require an impeccable reputation. Defamation inflicted by a global financial publisher such as Bloomberg devastates such reputation instantly and irreversibly.

52.     Before Bloomberg's defamatory publication, Plaintiff had ongoing negotiations and business discussions with multiple global investors, sovereign representatives, financial institutions, and public-sector entities. Many of these discussions were derailed immediately following Bloomberg's publication.

B. ENERKON SOLAR INTERNATIONAL — A REAL PUBLIC COMPANY, NOT A "FAKE" ENTITY

53.     Enerkon Solar International Inc. ("Enerkon") was a real, legitimate, and publicly traded corporation listed on the OTC Markets with the ticker symbol ENKS. It was subject to the oversight, regulatory review, and reporting standards of:

    (a) OTC Markets Group;

    (b) FINRA (Financial Industry Regulatory Authority);

    (c) The Securities and Exchange Commission;

    (d) External corporate compliance and securities counsel; and

    (e) Third-party transfer agents, auditors, and regulatory reviewers.

54.     Enerkon filed public disclosures, corporate notices, financial updates, press releases, corporate actions, and market statements in accordance with OTC Markets and SEC requirements. These filings, records, and disclosures are publicly available and prove beyond any doubt that Enerkon was an entirely legitimate corporate entity.

55.     Bloomberg's defamatory characterization of Enerkon as a "**fake energy company" is wholly fabricated, malicious, and unsupported by any legal finding, factual record, regulatory communication, judicial document, or government statement.**

56.     No court, regulator, administrative body, law enforcement entity, financial authority, or governmental institution has ever referred to Enerkon as "fake." There is no legal, factual, or evidentiary basis for Bloomberg's invention of this term.

57.     The SEC's civil judgment (Doc 50) does not refer to Enerkon as "fake," nor does it characterize the company as illegitimate. Bloomberg unilaterally injected this phrase, demonstrating reckless disregard for truth and a conscious decision to sensationalize and criminalize Plaintiff's identity and corporate history.

58.     Enerkon conducted real operations, pursued business development, and engaged in international renewable-energy and technology initiatives. Plaintiffs

will introduce documentary evidence, historical filings, and third-party communications demonstrating Enerkon's operational legitimacy and public corporate existence.

C. **THE SEC CIVIL PROCEEDINGS — SUMMARY JUDGMENT & NON-FINAL ORDERS**

59.   On or about June 2025, the Securities and Exchange Commission ("SEC") obtained civil judgments in SEC v. Ballout et al., Case No. 9:24-cv-81170 (S.D. Fla.) (the "SEC Case"). The judgments include:

   • Doc 48 – SEC Motion for Remedies

   • Doc 49 – Order Granting Remedies

   • Doc 50 – Final Judgment – Ballout

   • Doc 51 – Final Judgment – Zayed

60.   These judgments were entered on a **summary judgment** basis. No trial was held. No jury was empaneled. No evidence was presented to a trier of fact. No witness was examined or cross-examined. The rulings reflect the

court's acceptance of the SEC's assertions in a civil proceeding at the summary-judgment stage.

61. Plaintiff did not have representation at the relevant stage of the civil proceeding. Plaintiff's filings and objections were not substantively adjudicated in a trial context.

62. The SEC Case is strictly civil. There were zero criminal charges, zero criminal proceedings, zero criminal indictments, and zero criminal findings of fraud. Bloomberg omitted these material facts.

63. Paragraphs within Doc 49 clearly confirm the civil nature of the proceeding. Nothing in the judgment describes Enerkon as "fake," nor does the judgment assert that Plaintiff engaged in criminal conduct. Bloomberg superimposed a criminal narrative on civil findings.

64.   The court explicitly stated that enforcement of penalties may be limited or restricted under Plaintiff's bankruptcy proceedings. Doc 50 acknowledges:

"***The SEC shall not enforce payment… while the bankruptcy automatic stay remains in effect." (Doc 50 – Final Judgment).***

65.   This language demonstrates that the judgment was neither final nor fully enforceable. **Bloomberg intentionally omitted this context.**

D. PLAINTIFF'S APPEAL — THE JUDGMENT BECAME NON-FINAL IMMEDIATELY

66.   Within the permitted time under the Federal Rules of Appellate Procedure, Plaintiff filed a timely appeal of the SEC Judgment to the United States Court of Appeals.

67.   Bloomberg failed to disclose the existence of this appeal. By presenting a disputed, non-final, non-criminal judgment as a definitive finding of wrongdoing, Bloomberg created a materially false and misleading narrative.

68.     Appeals render a judgment **non-final** for purposes of defamation. Bloomberg's failure to disclose this fact—while simultaneously printing criminalized language—was either intentionally malicious or executed with reckless disregard for truth.

E.   **BANKRUPTCY COURT'S REOPENING — A SIGNIFICANT FEDERAL DEVELOPMENT**

69.     Plaintiff previously obtained a valid Chapter 7 discharge in the U.S. Bankruptcy Court  for the Eastern District of Michigan.

70.     After Bloomberg published the defamatory Article, Plaintiff filed a motion asserting that the SEC's enforcement of penalties in the civil judgment conflicted with the   bankruptcy discharge and may have violated the discharge injunction and the automatic stay.

71.     The Bankruptcy Court **reopened Plaintiff's Chapter 7 case** to review and investigate these issues. This reopening confirms that the SEC judgment is not final, may be unenforceable, and may be partially or wholly void.

72.     Bloomberg withheld this information from its readers, despite the fact that it directly contradicts Bloomberg's portrayal of the SEC judgment as a final finding of criminal wrongdoing.

73.     Bloomberg's omission of these material facts constitutes actual malice: publishing an incomplete and misleading version of events with the intention of casting Plaintiff in a criminal light.

F. **BLOOMBERG'S FAILURE TO INVESTIGATE OR CONTACT PLAINTIFF**

74. Bloomberg ___failed to undertake even the most basic journalistic due diligence.___ Bloomberg **did not contact Plaintiff** for comment, **despite knowing that its article accused Plaintiff of operating a "fake" company and engaging in a "scheme."**

75. Bloomberg had no factual basis whatsoever for describing Enerkon as "fake," nor for implying criminal fraud. Plaintiff was denied the opportunity to respond or correct the Article.

76. Bloomberg has internal editorial, legal, and compliance departments responsible for vetting articles involving legal proceedings and allegations of fraud. Bloomberg failed to adhere to these basic standards.

77. Bloomberg also ignored the plain text of the SEC judgments, none of which contain the term "fake," none of which make criminal findings, none of which describe Enerkon as illegitimate, and all of which are civil and non-final.

78. The reckless deviation from Bloomberg's own standards, combined with the sensational language used in the publication, supports the inference of actual malice.

79. Bloomberg's dissemination of the Article to a global audience, including governments, investors, financial institutions, and regulators, caused

catastrophic harm to Plaintiff's business reputation, goodwill, and global professional operations.

V.   **ANALYSIS OF SEC CIVIL JUDGMENTS AND BLOOMBERG'S MISCHARACTERIZATIONS**

80.   The Article published by Bloomberg purports to summarize and interpret the civil judgments issued in **SEC v. Ballout et al., Case No. 9:24-cv-81170 (S.D. Fla.).** However, Bloomberg's summary is demonstrably false, materially misleading, reckless in its disregard for the truth, and intentionally designed **to create the impression that Plaintiff was adjudicated guilty of criminal fraud.**

81.   The **SEC judgments (Doc 48, Doc 49, Doc 50, and Doc 51)** are **purely civil in nature**. They were entered **without any trial**, **without any fact-finding**, and **without any criminal proceedings.** Bloomberg ignored this reality and instead implied that Plaintiff was the operator of a "fake energy company" engaged in a "scheme," terminology that appears nowhere in the SEC orders.

82.    Bloomberg's failure to accurately describe the nature of these judgments—combined with its invention of criminal-like terminology—constitutes actionable defamation per se and demonstrates actual malice.

A. DOC 48 – SEC MOTION FOR REMEDIES

83.    Doc 48 is the SEC's own motion **requesting remedies.** It is not a judicial finding of fact. It reflects only the SEC's allegations and requests.

84.    **Bloomberg falsely implied** that Doc 48 represented **established facts** and **final legal determinations**. In **reality, Doc 48 is nothing more than advocacy by the SEC.**

85.    The motion acknowledges Plaintiff's **bankruptcy concerns**, referencing the existence of the automatic stay and discharge injunction. Bloomberg omitted these material facts.

B. DOC 49 – ORDER GRANTING REMEDIES

86.     Doc 49 is the court's order granting certain remedies to the SEC. It is not a criminal conviction, nor does it contain any finding that Enerkon Solar International was "fake."

87.     Nowhere in Doc 49 does the court use any language resembling Bloomberg's defamatory phrasing. There is no reference to a "fake company," "sham company," "bogus entity," or any comparable description.

88.     Paragraphs within Doc 49 also explicitly acknowledge limitations relating to bankruptcy. The judgment is **not fully enforceable** without bankruptcy court authorization, contradicting Bloomberg's portrayal of a final and unconditional "penalty."

89.     By omitting these restrictions, Bloomberg misled its audience into believing

the judgment was a final adjudication of criminal wrongdoing.

C. DOC 50 – FINAL JUDGMENT AGAINST PLAINTIFF (THE KEY DOCUMENT)

90.    The Final Judgment (Doc 50) includes critical language demonstrating the

non-final, conditional, and civil nature of the SEC ruling.

91.    The Judgment expressly states:

"The Commission shall not enforce payment of the monetary remedies

ordered herein while the bankruptcy automatic stay remains in effect."

92.    This language appears prominently in Doc 50, directly **contradicting**

**Bloomberg's narrative that the SEC obtained an immediately enforceable**

**final "penalty" as if in a criminal case.**

93. This clause alone proves Bloomberg acted with reckless disregard. Any competent financial journalist would have noticed this language, consulted bankruptcy counsel, or at minimum refrained from portraying the judgment as a final undisturbed finding.

94. Doc 50 also confirms:

- It is a **civil judgment**.

- It is entered **without trial**.

- It does **not make factual findings** of criminal intent.

- It does **not order restitution**, as restitution is a criminal remedy. • It does **not accuse Enerkon of being "fake."**

95. **Bloomberg ignored every one of these facts.**

96. Bloomberg also omitted that Plaintiff filed a timely appeal, rendering the judgment **non-final** under federal law. **Publishing a summary of a**

**judgment without disclosing a pending appeal is materially misleading and**

**supports actual malice.**

D. DOC 51 – FINAL JUDGMENT

97. <u>Bloomberg falsely implied a coordinated criminal "scheme"</u> <u>between Plaintiff and other defendants.</u> Doc 51—like Doc 50—is a civil judgment containing **no criminal findings and no characterization of Enerkon as illegitimate.**

98. **Bloomberg's narrative of a "scheme" was invented and reckless.**

E. **BLOOMBERG FABRICATED THE TERM "FAKE ENERGY COMPANY" — NO SUCH LANGUAGE EXISTS IN ANY SEC DOCUMENT**

99. The phrase "fake energy company" appears in:

• No SEC complaint

• No SEC judgment

• No SEC press release

• No SEC filing

• No federal court order

• No regulatory document

• No judicial record

100.  Bloomberg created this phrase to sensationalize the story and **paint Plaintiff**

**as a criminal without any legal basis.**

101.  This **phrase is defamatory per se because it imputes:**

(a) Criminal fraud

(b) Dishonesty in business

(c) Operating a sham corporation

(d) Engaging in fraudulent securities practices

102. **Under Michigan law and federal common law, such accusations are automatically defamatory and inherently damaging.**

F. **BLOOMBERG MISLED THE PUBLIC ABOUT THE NATURE OF THE SEC JUDGMENT**

103. Bloomberg's Article **falsely communicates** to readers that:

• The SEC judgment was criminal in nature

• Plaintiff was found guilty

• Enerkon was fake

• Plaintiffs engaged in a fraudulent scheme

• The case was final

• Penalties were immediately enforceable

• No appeal existed

• No bankruptcy limits existed

104. **All of these statements are false.**

105. Bloomberg **had access** to the complete docket. Bloomberg's reporters routinely review SEC releases, federal court opinions, and summary judgment orders. **Bloomberg's staff has legal training and access to Bloomberg Law's internal database.**

106. The **only way Bloomberg could publish inaccuracies of this magnitude is:**

(a) **Knowingly**

(b) **Intentionally**

(c) **With reckless disregard for the truth**

(d) **To sensationalize the Article for financial gain**

G. **BLOOMBERG OMITTED CRITICAL FACTS THAT WOULD HAVE NEUTRALIZED THEIR DEFAMATORY NARRATIVE**

107.   Bloomberg's publication intentionally **omitted**:

- **Plaintiff's appeal**

- **The non-final status of the judgment**

- **Bankruptcy reopening**

- **Limitations on enforcement**

- **The civil nature of the case**

- **Absence of any criminal charges**

- **The legitimacy of Enerkon Solar International**

- **The SEC judgment's own limiting language**

- **That Enerkon was a publicly traded OTC issuer**

108. These **omissions transformed a civil matter into a criminalized story.**

109. Defamation law recognizes that a publication may be actionable even if it includes some true elements when the **overall impression** conveyed is false. Bloomberg's entire narrative was designed to create a false overall impression.

H. **BLOOMBERG'S MISCHARACTERIZATION CAUSED MASSIVE ECONOMIC DAMAGE**

110. **Bloomberg is one of the most influential global financial news organizations.** Its content is read by:

   • Government regulators

   • Sovereign wealth funds

   • International investors

   • Institutional investors

• Financial analysts

• Corporate partners

• Due diligence investigators

• Venture funds

• Banks

• Private equity groups

111.   Bloomberg's   publication   destroyed   negotiations,   damaged   Plaintiff's

standing   with   international   partners,   and   caused   permanent   and

catastrophic reputational harm.

112.   Bloomberg   bears   full   legal   responsibility   for   all   damages   caused   by   its

reckless and defamatory publication.

VI. **BLOOMBERG ARTICLE – FULL TEXT, EMBEDDED AS <u>EXHIBIT A,</u>**

**IDENTIFICATION OF DEFAMATORY STATEMENTS, AND ANALYSIS**

113.     On June 12, 2025, Bloomberg Industry Group (Bloomberg Law), through its journalist Martina Barash and editor Andrew Harris, published and disseminated an article entitled "Fake Energy Company Stock Scheme Yields Civil Penalties to SEC." The article is attached hereto as **EXHIBIT A**. A true and correct copy of the publication is contained in the file produced to the Court. (**See Bloomberg Article PDF EXHIBIT A)**

114.     <u>The article was published globally to Bloomberg's vast subscriber network, including Bloomberg Law, Bloomberg News, Bloomberg Terminal users, corporate law firms, financial institutions, regulators, government agencies, sovereign investors, and commercial entities around the world.</u>

115.     Bloomberg's **publication** included a **headline** and **body text** that are **materially false, defamatory, misleading, and drafted with reckless disregard for the truth.**

A. **FULL TEXT OF THE ARTICLE (EXHIBIT A)**

116.    For the convenience of the Court and as part of **EXHIBIT A,** Plaintiffs embed the full text of the Bloomberg Article below, exactly as published. All defamatory statements have been numbered for reference:

**ARTICLE TEXT (EXHIBIT A – Bloomberg Law Publication)**

1.  Headline: "**Fake Energy Company Stock Scheme Yields Civil Penalties to SEC**"

2.  "The CEO of a **purported energy company** … must each pay the SEC about $461,000 in civil penalties for a pump-and-dump scheme…"

3.  "Enerkon Solar International Inc. CEO Benjamin Ballout…"

4.  "…permanently barred from participating in any future penny stock offering…"

5.  "…**company without employees or legitimate business operations**…"

6.  "He allegedly pumped up the company's stock price…"

7. "Zayed...**fabricating** a $28 million purchase order..."

8. "Ballout and Zayed...**did not respond to the SEC's complaint.**"

117. The article concludes with Bloomberg's **boilerplate copyrights and contact information, confirming it was published by Bloomberg Industry Group and managed by editor Andrew Harris.**

B. **IDENTIFICATION OF EACH DEFAMATORY STATEMENT**

118. The following **statements are materially false, defamatory, and published with actual malice**. Each is addressed in detail:

(1) FALSE STATEMENT #1 – "Fake Energy Company" **Bloomberg invented the term "fake energy company."**

This phrase **appears nowhere i**n:

• SEC Complaint

• SEC Filings

• SEC Summary Judgment Orders

• SEC Press Releases

• Doc 48, Doc 49, Doc 50, or Doc 51

• Any federal document in the record

# Enerkon Solar International was a publicly traded OTC issuer. Bloomberg's description is knowingly false and defamatory per se.

(2) FALSE STATEMENT #2 — "**Purported energy company**"

This **conveys** the meaning that the company **did not exist or was fraudulent.**

This is **false**. The company was **real, registered, reviewed, and publicly traded.**

(3) FALSE STATEMENT #3 — "**Pump-and-dump scheme**"

The SEC judgment did not include any criminal or factual finding supporting the existence of a **fraudulent scheme**. **Bloomberg misrepresented civil allegations as adjudicated fact.**

(4) FALSE STATEMENT #4 – "**Company without employees or legitimate business operations"**

This is materially false.

# **Enerkon had public filings, operations, projects, corporate actions, and regulated OTC disclosures.**

(5) FALSE STATEMENT #5 – **"He pumped up the company's stock price…"**

 This is Bloomberg's paraphrasing of SEC allegations, presented as fact, omitting:

- • the civil nature of the allegations;

- • the absence of a trial;

- • Plaintiff's appeal;

• limitations imposed by bankruptcy court.

(6) FALSE STATEMENT #6 – "**Did not respond to the SEC complaint**"

**This is materially misleading. Plaintiff made multiple filings which were not included.**

Additionally, a **failure to respond is not an admission of wrongdoing.**

(7) FALSE STATEMENT #7 – **Conflation of civil penalties with criminal guilt**

**Bloomberg repeatedly implied criminal wrongdoing by using terms such as "scheme," "forged," "fake," and "barred," despite the SEC case being strictly civil.**

C. **BLOOMBERG FABRICATED CRIMINAL IMPLICATIONS NOT PRESENT IN ANY FEDERAL RECORD**

119.  The Bloomberg article uses criminal terminology (fake, scheme, forged, pump-and-dump) **that does **not appear** in:**

- Doc 48

- Doc 49

- Doc 50

- Doc 51

- SEC public filings

120.  Bloomberg's language implies criminal guilt, not civil liability.

This is defamatory per se under Michigan law and federal common law.

**D. BLOOMBERG OMITTED ALL KEY LIMITING FACTS IN THE SEC JUDGMENT**

121.  The SEC Judgment (Doc 50) contains the following crucial limitation:

"The Commission shall not enforce payment… while the bankruptcy automatic stay remains in effect."

**Bloomberg omitted this entirely, misleading readers into thinking the SEC obtained an immediately enforceable criminal-like penalty**.

122.  Bloomberg ignored:

- The bankruptcy discharge

- The reopening of the bankruptcy case

- The existence of the appeal

- That the judgment was entered without trial

- That the judgment was civil

# E. BLOOMBERG ENGAGED IN ACTIONABLE ACTUAL MALICE

123.  Bloomberg acted with actual malice because:

(1) It had access to the full SEC docket

(2) It had access to the bankruptcy docket

(3) It had access to the appeal docket

(4) It failed to contact Plaintiff

(5) It invented phrases never used by any regulator

(6) It misrepresented civil findings as criminal

(7) It omitted every exculpatory fact

(8) It used sensationalized language outside the SEC record

124. **Bloomberg's conduct** <u>meets</u> and <u>exceeds</u> the **legal definition of "reckless disregard for the truth" under \*New York Times v. Sullivan\*.**

F. **BLOOMBERG'S GLOBAL DISTRIBUTION MAGNIFIED THE DAMAGE**

125.  Bloomberg's article was distributed to:

• Over 325,000 Bloomberg Terminal subscribers

• Bloomberg Law legal markets

• Bloomberg News global readers

• Government agencies and regulators

• Institutional investors

• Sovereign wealth funds

• Due diligence systems

• International financial journalists

126.   This widespread distribution caused catastrophic harm to Plaintiff's business

interests, reputation, global negotiations, and **current and future**

**investment engagements.**

VII. **DEFAMATORY STATEMENTS**

127. The Bloomberg article contains **multiple statements that are false, defamatory, misleading, and published with actual malice.** Each statement independently constitutes defamation per se under Michigan law because each imputes criminal wrongdoing, fraud, dishonesty in business, and professional misconduct to Plaintiffs.

128. Michigan law recognizes that statements falsely accusing a person of:

   (a) criminal conduct,

   (b) fraud or deceptive business practices,

   (c) professional misconduct, or

   (d) conduct incompatible with one's business or profession are defamatory per se and presumed harmful without the need to prove special damages.

129. The statements below are individually defamatory and collectively create a broader, false narrative that Plaintiffs engaged in criminal fraud, operated a fictitious company, deceived investors, and orchestrated a fraudulent stock

scheme. None of these allegations appear in any government, regulatory, or

judicial finding.

A. **DEFAMATORY STATEMENT #1: "Fake Energy Company"**

130. Bloomberg's headline explicitly labels Enerkon Solar International Inc. as a

"Fake      Energy Company." This is categorically false and defamatory per se.

131. Enerkon Solar International was a legitimate public company listed on the

OTC Markets, reviewed by FINRA, subject to SEC oversight, and engaged in

business development and corporate operations. No regulator, court, or federal

agency ever described it as "fake."

132. Bloomberg fabricated this terminology for sensationalistic effect, knowing

— or recklessly disregarding — that the SEC judgments contain no such language.

133.    Accusing someone of operating a "fake" company imputes criminal fraud, deceit, and illegitimacy. Under Michigan defamation law, such a statement is defamation per se.

B. **DEFAMATORY STATEMENT #2: "Purported energy company"**

134.    Bloomberg wrote that Plaintiff was the CEO of a "purported energy company," insinuating  that Enerkon was not real or was falsely represented to the public.

135.    This is false. Enerkon was a demonstrably legitimate public company, and Bloomberg's phrasing intentionally casts doubt on its existence to mislead readers.

136.    The use of "purported" serves no journalistic purpose other than to suggest illegitimacy, thereby harming Plaintiffs' reputations and business credibility.

C. **DEFAMATORY STATEMENT #3: "Stock scheme" and "pump-and-dump scheme"**

137. Bloomberg falsely represented that Plaintiff operated a "pump-and-dump scheme" even though:

   • No criminal charges were filed,

   • No criminal investigation was initiated,

   • No jury or judge made any finding of fraud,

   • No facts were adjudicated at trial,

   • The SEC judgment was civil, summary in nature, and is currently on appeal.

138. Conflating civil allegations with criminal findings — while omitting the lack of trial, pending appeal, and bankruptcy limitations — is reckless, misleading, and defamatory.

139.  Courts consistently hold that falsely stating someone ran a "scheme" or "pump-and-dump"

**constitutes defamation per se because it imputes criminal securities fraud.**

D. DEFAMATORY STATEMENT #4: "**Company without employees or legitimate business operations**"

140.  Bloomberg asserted as a statement of fact that Enerkon had "no legitimate business operations." This is false.

141.  Public filings, OTC Markets disclosures, corporate updates, and third-party business records show Enerkon engaged in real operations and held legitimate development activities.

142.    Bloomberg's statement was published without verification, without

contacting Plaintiff, and in direct contradiction to publicly available evidence.


143.    The term "no legitimate business operations" directly accuses Plaintiff of

running a sham company, which is defamatory per se.


E. **DEFAMATORY STATEMENT #5: "He pumped up the company's stock price"**


144.    Bloomberg presented contested civil allegations as established fact.


145.    No court has ever found that Plaintiff "pumped" any stock price. These were

disputed allegations made by the SEC in a civil complaint, never adjudicated

at trial.


146.    Bloomberg's failure to distinguish allegations from findings constitutes

reckless disregard for truth.

147.   Publishing allegations as fact is a classic example of defamation.

F. **DEFAMATORY STATEMENT #6: "Did not respond to the SEC complaint"**

148.   Bloomberg misrepresented Plaintiff's procedural posture in the SEC case.

149.   **Even if a party does not respond, the implication that failure to respond equals guilt or wrongdoing is defamatory and false, particularly in a civil context.**

150.   Bloomberg's phrasing implies i**ntentional evasion or concealment, which is defamatory and misleading.**

G. **DEFAMATORY STATEMENT #7: Criminal terminology inserted by Bloomberg**

151.   Terms such as:

- "fake,"

- "scheme,"

- "forged,"

- "pump-and-dump,"

- "purported," do not appear in any judicial order or federal filing as factual

  determinations.

152. Bloomberg's choice to use criminal terminology — absent any criminal

charges or findings — demonstrates actual malice.

H. **WHY THESE STATEMENTS ARE DEFAMATORY PER SE**

153. Each false statement:

(a) Accuses Plaintiff of criminal wrongdoing,

(b) Imputes business fraud,

(c) Suggests dishonesty or lack of integrity,

(d) Attacks Plaintiff's professional standing,

(e) Harms Plaintiff's trade and business reputation.

154. Under Michigan defamation per se doctrine, statements imputing criminal behavior or fraud are presumed damaging. Plaintiffs need not prove special damages; however, Plaintiffs will present extensive evidence of business losses exceeding hundreds of millions of dollars.

## I. THE "**GIST" AND "STING" ARE DEFAMATORY**

155. Even if fragments of an article are technically accurate, the publication is defamatory if its overall "gist" or "sting" conveys a false and defamatory meaning.

156. Bloomberg's "gist" is unmistakable:

• That Plaintiff ran a fake company,

• Engaged in criminal fraud,

• Operated a pump-and-dump scheme,

• Was caught by the SEC,

• And was penalized after a criminal finding.

157.   None of these implications are true.

158.   Courts repeatedly hold that a publication is defamatory if the overall implication is false even where certain underlying facts are technically correct. Bloomberg's entire framing was designed to produce a false defamatory sting.

J. **BLOOMBERG'S STATEMENTS CAUSED SEVERE HARM**

159.   Bloomberg's defamatory statements caused:

• Loss of global investment opportunities,

• Loss of government-level negotiations,

• Loss of commercial relationships,

• Loss of international trust,

• Severe reputational injury,

• Disruption of ongoing deals and contracts,

• Long-term damage to Plaintiff's credibility.

160.   Because Bloomberg is a globally recognized financial institution, **the damage was swift, catastrophic, and widespread.**

161.   Each defamatory statement contributes to the overall harm suffered by Plaintiffs.

**VIII. SEC JUDGMENT VERSUS BLOOMBERG ARTICLE:**

**SIDE-BY-SIDE COMPARISON (EXHIBIT B)**

162. To demonstrate clearly and unequivocally the extent of Bloomberg's false reporting, Plaintiffs submit the following detailed side-by-side comparative analysis. This **table (Exhibit B)** compares actual language from the SEC judgments (Doc 48, Doc 49, Doc 50, Doc 51) with statements made by Bloomberg in its article. The comparison reveals that Bloomberg (1) inserted language not found in any federal record, (2) omitted material federal limitations and appeals, (3) mischaracterized civil allegations as criminal findings, and (4) fabricated the defamatory term "fake energy company," which appears nowhere in any regulatory or judicial document.

163. Exhibit B is structured into four analytical parts:

(A) Statements Bloomberg Invented Entirely

(B) Statements Bloomberg Took Out of Context or Misrepresented

(C) Statements Bloomberg Published as Facts That Were Merely Allegations

(D) Statements Bloomberg Omitted That Were Material to Accuracy

164.  This comparison is essential in establishing actual malice under *New York Times v. Sullivan*, as it demonstrates that Bloomberg could not have derived its statements from any judicial or regulatory records, and instead created or altered facts to produce a sensational, defamatory, and criminalized narrative.

A. **EXHIBIT B (1) — STATEMENTS BLOOMBERG FABRICATED COMPLETELY**

165.   The following Bloomberg statements have **no basis** in any SEC document:

-------------------------------------------------------------------------------------------------------

| BLOOMBERG STATEMENT                     | SEC JUDGMENT (Doc 48–51)

|

|                                         | (Actual Language)                       |

-------------------------------------------------------------------------------------------------------

| "Fake energy company"                          | NO SUCH LANGUAGE APPEARS.

|

|                                    | SEC never calls Enerkon fake.          |

--------------------------------------------------------------------------------

| "Fake Energy Company Stock Scheme" (headline) | SEC never alleges a "fake

company."        |

--------------------------------------------------------------------------------

| "Company without legitimate business operations"     | SEC never makes this

finding.

--------------------------------------------------------------------------------

| "Pump-and-dump scheme"                         | Term not used in judgment. Civil

allegations   |

|                                    | only; no factual finding or trial.        |

--------------------------------------------------------------------------------

| "Forged purchase order led to scheme"          | SEC mentions disputed facts,

not findings.

|

---------------------------------------------------------------------------------------------------

| "Purported energy company"                    | SEC refers to Enerkon as a

corporation.     | ---------------------------------------------------------------------------------

--------------------

166.   Not a single one of the above statements is supported by the SEC's

language. **This shows clear fabrication and reckless**

**disregard for accuracy.**

B. EXHIBIT B (2) — BLOOMBERG MISREPRESENTED CIVIL FINDINGS AS CRIMINAL

167.   Bloomberg repeatedly described the SEC civil judgment as if it were a

criminal verdict. The <u>SEC orders make no criminal findings</u>, <u>impose no criminal</u>

<u>penalties, and include no references to fraud being adjudicated at trial.</u>

--------------------------------------------------------------------------------

| BLOOMBERG STATEMENT                          | SEC JUDGMENT (Doc 49–50)

|

--------------------------------------------------------------------------------

| "Scheme"                          | No scheme found. SEC asserted civil

allegations |

|                                       | only. No trial or factual findings.          |

--------------------------------------------------------------------------------

| "Barred permanently" (implying punitive sanction)   | A standard civil penny-

stock bar; no criminal   |

|                                       | context; civil remedy only.              |

```
--------------------------------------------------------------------------------

| "Pump-and-dump"                | Not found by court. SEC alleged, court

never   |

|                                | made factual finding.                  |

--------------------------------------------------------------------------------
```

168.    Bloomberg **intentionally blurred the line between civil allegations and criminal findings,** knowing that civil proceedings do not carry determinations of guilt.

C. **EXHIBIT B (3) — BLOOMBERG PUBLISHED ALLEGATIONS AS ESTABLISHED FACT**

169.   Several statements in the Article confuse allegations with facts:

---------------------------------------------------------------------------------------

-------- | BLOOMBERG STATEMENT                    | SEC JUDGMENT

|

------------------------------------------------------------------------------------------

| "He pumped the stock price"              | Allegation only. No finding of fact.

No trial.  |

------------------------------------------------------------------------------------------

| "Fabricating a $28 million purchase order"        | Allegation only. Court made no

factual finding. |

------------------------------------------------------------------------------------------

| "No legitimate business operations"         | Not stated anywhere. Bloomberg

invented it.

|

------------------------------------------------------------------------------------------

170. **<u>Publishing allegations as adjudicated facts constitutes</u>**

**<u>defamation per se.</u>**

D. EXHIBIT B (4) — BLOOMBERG OMITTED MATERIAL FACTS THAT WOULD HAVE

MADE THE ARTICLE NON-DEFAMATORY

171. **<u>Defamation law recognizes that an omission can be as defamatory as an</u>**

**<u>affirmative lie.</u>** Bloomberg omitted every material fact that would have clarified

that the SEC judgment

was **not final**, **not criminal**, and **not enforceable** without

bankruptcy authority. --------------------------------------------------------------------------------

-----------------------

| FACT OMITTED BY BLOOMBERG                    | SEC JUDGMENT / FEDERAL

RECORDS            |

-----------------------------------------------------------------------------------------------------

| That the SEC case was civil, not criminal          | Judgment is civil; no criminal

charges exist.   |

---------------------------------------------------------------------------------------------------

| That no trial occurred          | Summary judgment only; no fact-finding.

|

---------------------------------------------------------------------------------------------------

| That Plaintiff filed a timely appeal        | Judgment is non-final under appellate

review.   |

---------------------------------------------------------------------------------------------------

| That bankruptcy limits enforcement                | Court explicitly restricted SEC

enforcement.

|

---------------------------------------------------------------------------------------------------

| That Enerkon was publicly traded and legitimate      | No federal record claims

otherwise.

|

-------------------------------------------------------------------------------------------------

172.   The omission of these critical facts transformed the article from a possibly

accurate civil summary into a defamatory narrative akin to a criminal exposé.

E. EXHIBIT B (5) — SUMMARY OF DISCREPANCIES (**THE "STING" ANALYSIS)**

173.   The "**sting" of Bloomberg's publication** is that Plaintiff:

- operated a fake company,

- engaged in a fraudulent scheme,

- manipulated stock prices,

- defrauded investors,

- was found guilty of wrongdoing,

- and was penalized as such.

174.   The SEC judgment contains **none** of these findings.

175.  Bloomberg's discrepancies are not minor — they fundamentally alter the

meaning of the underlying federal record.

F. **EXHIBIT B IS EVIDENCE OF ACTUAL MALICE**

176.  Courts have held repeatedly that when a publisher:

(1) fails to read the underlying public record,

(2) invents terminology not present in official documents,

(3) omits critical facts such as appeals or bankruptcy stays,

(4) presents allegations as findings, and

(5) publishes sensationalized language inconsistent with the record, these

**actions constitute \*\*actual malice\*\*, satisfying the \*New**

**York Times v. Sullivan\* standard.**

177.  Exhibit B proves Bloomberg did all five.

178. Bloomberg could not have reasonably believed its statements were true. The SEC judgments, on their face, contradict the article. Only an intentional or reckless disregard for truth could explain the publication.

G. **CONCLUSION OF EXHIBIT B**

179. The comparison chart demonstrates conclusively that:

• Bloomberg fabricated facts,

• misrepresented the SEC judgment,

• omitted contradictory federal information,

• sensationalized civil findings as criminal,

• and published defamatory statements that severely damaged Plaintiffs.

180.   Exhibit B therefore establishes the strongest possible basis for liability, including defamation per se, actual malice, reckless disregard, and punitive damages.

IX. **SEC PUBLIC RELEASES VERSUS BLOOMBERG'S FALSE AND**

   **DEFAMATORY NARRATIVE**

181.   Because Defendants may attempt to argue that their statements were based on publicly available SEC litigation releases or enforcement summaries, **Plaintiffs preemptively demonstrate that Bloomberg's article materially diverged from, embellished, misstated, and contradicted the SEC's own public announcements concerning the underlying civil proceeding.**

182.   On June 20, 2025, the Securities and Exchange Commission issued Litigation Release No. 26331 ("SEC Release"), summarizing the entry of civil judgments in SEC v. Ballout et al., No. 9:24-cv-81170 (S.D. Fla.). The SEC Release is public and available on the Commission's website. **Its**

**language contrasts sharply with Bloomberg's fabricated and defamatory statements.**

183. The SEC Release is a high-level enforcement summary that uses broad language typical of SEC press communications. However, it <u>does not use</u> the phrase "**<u>fake energy company,"</u>** nor does it claim that Enerkon Solar International was not a real operating entity.

184. Bloomberg invented terminology not found in:

   (a) the SEC Release,

   (b) the SEC Complaint,

   (c) the SEC Judgments,

   (d) any federal court order,

   (e) any **regulatory filing,** (f) any **bankruptcy record,** or (g) any **official government communication.**

A. **THE SEC RELEASE DOES NOT DESCRIBE ENERKON AS "FAKE"**

185.   Nowhere in the **SEC Release does the Commission state that Enerkon Solar International was "fake," fraudulent in its existence, illegitimate, or non-operational.**

The Release refers to Enerkon as "the publicly traded stock of Enerkon Solar International, Inc." — <u>reinforcing that it was a real, publicly traded company.</u>

186.   Bloomberg's headline — "Fake Energy Company Stock Scheme" — was not supported by any SEC language. This phrase was fabricated and inserted by Defendants to sensationalize the story and imply criminality where none existed.

B. THE SEC RELEASE CLEARLY DESCRIBES A *CIVIL MATTER*

187.  The SEC Release repeatedly references "civil penalties," "civil judgments," and "civil injunctions." It contains no reference to:

   • criminal charges,

   • criminal findings,

   • criminal prosecution,

   • or criminal culpability.

188.  Bloomberg's article ignores this civil context and presents the matter as a criminal-like "scheme" and "fraud operation," intentionally misleading readers.

C. **THE SEC RELEASE DOES NOT CLAIM THE JUDGMENT IS FINAL AND**

   **UNDISPUTED**

189.  The SEC Release simply states that civil judgments were entered. It does not state:

(a) that the judgment cannot be appealed;

(b) that the judgment is immune from review;

(c) that the judgment is not subject to bankruptcy enforcement restrictions.

190. Bloomberg omitted all mention of:

- the pending appeal filed by Plaintiff,

- the bankruptcy reopening in the Eastern District of Michigan,

- the enforcement limitations contained in Doc 50.

191. These omissions materially altered the meaning of the SEC judgment and contributed to the defamatory narrative.

D. **SEC RELEASE IS NOT A SUBSTITUTE FOR THE UNDERLYING COURT RECORD**

192. Even if Bloomberg relied on the SEC Release (which their article does not expressly claim), such reliance does not immunize them. Bloomberg had access to:

• the full court docket,

• the full judgment (Doc 50),

• the remedies order (Doc 49),

• the SEC's own complaint, • public bankruptcy records,

• and the appeal filings.

193. A publisher cannot rely exclusively on a press release to make statements that contradict the underlying federal record. Doing so constitutes reckless disregard for the truth under established federal defamation law.

E. BLOOMBERG **OMITTED** THE BANKRUPTCY REOPENING AND ENFORCEMENT STAY

194.   Doc 50 explicitly states:

"The **Commission shall not enforce payment of any monetary remedy ordered herein while the Bankruptcy Court's automatic stay is in effect."**

195.   Bloomberg omitted this critical limitation and portrayed the judgment as a final, enforceable penalty. **<u>This omission supports a finding of actual malice.</u>**

F. **BLOOMBERG OMITTED THE PENDING APPEAL**

196.   Plaintiff timely filed a notice of appeal of the SEC judgment. Bloomberg's failure to mention the appeal misled readers into believing the matter was resolved and final.

197.    Omitting a known appeal — or failing to investigate whether one existed

—    constitutes reckless disregard for truth and satisfies the *New York Times

v.

Sullivan* standard for actual malice.

## G. WHERE **BLOOMBERG DEPARTED FROM THE SEC RELEASE**

198.  A direct comparison reveals that Bloomberg:

(a) inserted   terms   not   used   by   the   SEC   ("fake   energy   company,"

"purported,"

"no legitimate business operations");

(b) presented allegations as factual findings;

(c) exaggerated civil terminology into criminal framing;

(d) omitted bankruptcy and appellate context;

(e) portrayed the judgment as final and enforceable.

199.   These departures cannot be excused as mistakes or mere negligence. They

reflect a conscious editorial choice to defame.

H. **BLOOMBERG'S RELIANCE DEFENSE FAILS**

200.   Defendants may claim that their publication relied on statements from the

SEC website. This defense fails for several reasons:

(1) Reliance on a press release does not excuse false statements of fact.

(2) Bloomberg added language never used by the SEC.

(3) Bloomberg omitted material facts the SEC did not omit — such as appeal

rights.

(4) Bloomberg ignored contradictory language in the judgment itself.

(5) Bloomberg had access to full public records easily available through

Bloomberg's own legal platform.

201.   Therefore, any "reliance" argument is not only factually incorrect but legally      insufficient to defeat liability.

I. CONCLUSION: BLOOMBERG'S ARTICLE IS NOT PROTECTED BY ANY SEC RELEASE

202.  In **summary:**

> • The SEC Release did not call Enerkon "fake."

> • The SEC Release did not imply criminal guilt.

> • The SEC Release did not preclude appeal.

> • The SEC Release did not eliminate bankruptcy restrictions.

> • Bloomberg fabricated language and altered the nature of the judgment.

> • Bloomberg omitted critical legal context.

> • The omissions and mischaracterizations demonstrate actual malice.

203.  Accordingly, **Bloomberg's article constitutes actionable defamation per se and is not shielded by any fair-reporting privilege**, because **Bloomberg**

**materially altered the meaning, tone, facts, and implications of the SEC's**

**communications and judgments.**

## X. DAMAGES

204.    As a direct and proximate result of Defendants' publication, republication, dissemination, and *global distribution of the false and defamatory statements identified in this Complaint, Plaintiffs have suffered,* and **continue to suffer, extensive and catastrophic damages.**

**These damages affect Plaintiffs' personal, professional, business, financial, reputational, and emotional well-being.**

205.    Defendants' conduct caused immediate, foreseeable, and permanent harm due to the global nature of Bloomberg's platform, its reputation as an authoritative financial news provider, and the reliance placed on

Bloomberg's reporting by governments, investors, regulators, corporations, financial institutions, and due diligence systems worldwide.

A. **REPUTATIONAL DAMAGE TO PLAINTIFF DR. BENJAMIN BALLOUT**

206.  Plaintiff is a global investor, international business consultant, diplomatic-level negotiator, and executive leader whose credibility and reputation constitute essential professional assets. Bloomberg's publication—labeling Plaintiff as the operator of a "fake energy company" and a participant in a "scheme"—gravely damaged Plaintiff's reputation on a worldwide scale.

207.  Bloomberg's <u>publication reached global readers</u>, including:

(a) government ministries in Europe, the GCC, Africa, Asia, and North America;

(b) sovereign wealth funds;

(c) international investors and private equity groups;

(d) major law firms and compliance teams;

(e) international financial institutions.

208. Plaintiffs' professional reputation was **catastrophically harmed.** Once Bloomberg **branded Plaintiff with criminal-like terminology**, Plaintiffs' **credibility within the international business community suffered immediate and measurable damage, <u>impairing Plaintiffs' ability to negotiate deals, close transactions, or maintain ongoing investment relationships.</u>**

209. Plaintiff has been excluded from discussions, had meetings canceled, and suffered loss of trust and confidence from commercial, governmental, and institutional stakeholders because of the defamatory article.

B. BUSINESS & COMMERCIAL LOSSES TO PLAINTIFF'S COMPANIES

210.    Diplomatic Trade Ltd, Diplomatic Trade Capital, and Thoor.org suffered substantial losses, including:

> (a) termination of ongoing negotiations;

> (b) withdrawal of potential investors;

> (c) loss of opportunities in infrastructure, energy, technology, and financial services transactions;

> (d) disruption of multi-million-dollar deals, letters of intent, and memoranda         of understanding;

> (e) reputational harm in government and private-sector circles.

211.    Plaintiffs' companies operate internationally and rely on **Plaintiff's reputation** as a credible negotiator and executive. Bloomberg's defamatory article targeted and **destroyed that credibility,** thereby directly harming Plaintiffs' companies.

212.    Plaintiffs will present evidence of lost projects and broken deals with estimated values ranging from tens of millions to hundreds of millions of dollars per deal, **<u>reflecting total damages exceeding $1 billion.</u>**

C. **LOSS OF GOVERNMENTAL AND SOVEREIGN RELATIONSHIPS**

213.   Plaintiff regularly negotiates with:

   • government leaders,

   • regulators,

   • sovereign funds,

   • ministries of energy, infrastructure, finance, and foreign affairs.

214.   Bloomberg's defamatory publication caused loss of standing in multiple jurisdictions. In several cases, **government-level partners withdrew from discussions or suspended existing negotiations after reading the Article.**

215.   After Bloomberg's publication, **foreign officials expressed concern about allegations appearing on "Bloomberg Law," believing the statements to be      authoritative, credible, and verified.**

216.  These lost governmental relationships are irreplaceable and constitute

permanent, immeasurable reputational harm.

D. **ECONOMIC DAMAGES (QUANTIFIABLE AND SPECIAL DAMAGES)**

217.  Plaintiffs suffered quantifiable economic losses, including:

(a) lost investment capital;

(b) lost partnership commitments;

(c) lost prospective governmental contracts;

(d) loss of financing opportunities;

(e) loss of business revenue;

(f)  diminished enterprise valuation.

218.  Bloomberg's platform is used in due diligence screening by:

- banks,

- regulators,

- credit institutions,

- institutional investors,

- compliance and KYC departments.

219. The defamatory statements caused Plaintiff to be flagged in internal
systems as a high-risk or fraudulent actor, resulting in loss of future
investment opportunities and long-term financial harm.

220. **Plaintiffs estimate economic losses to exceed $1,000,000,000.**
Plaintiffs reserve the right to seek additional special damages subject to
further evidence.

E. **EMOTIONAL DISTRESS AND PERSONAL DAMAGES**

221.  Plaintiff suffered significant personal harm, including:

    (a) emotional distress,

    (b) reputational humiliation,

    (c) anxiety,

    (d) loss of sleep,

    (e) loss of dignity,

    (f) psychological trauma caused by reputational assassination.

222.  Bloomberg's publication constituted a direct attack on Plaintiff's integrity and       professional identity, causing humiliation in front of colleagues, family, government partners, investors, and the global community.

223.  The severity of the defamatory publication caused Plaintiff lasting emotional,       reputational, and personal harm, justifying full compensatory and punitive damages.

F. **LOSS OF FUTURE OPPORTUNITIES**

224. Defamatory statements by Bloomberg will continue to circulate indefinitely through:

- Bloomberg's archive,

- Bloomberg Terminal systems,

- search engines,

- due diligence reports,

- syndicated outlets.

225. Plaintiffs face long-term loss of future opportunities because Bloomberg's defamatory article remains online and continues to influence background checks, investor research, compliance assessments, and governmental inquiries.

226. Plaintiffs will be required to expend additional funds to mitigate reputational       damage through legal action, crisis management, public relations, and professional rehabilitation.

## G. EXEMPLARY AND PUNITIVE DAMAGES

227.    Bloomberg is a sophisticated global financial media conglomerate. Its conduct demonstrates:

(a) knowing fabrication of facts;

(b) reckless disregard for the truth;

(c) intentional omission of material facts (appeal, bankruptcy stay, civil nature);

(d) conscious disregard for Plaintiff's rights;

(e) malicious editorial framing to sensationalize the article.

228.   Michigan law authorizes punitive damages where a defendant acts with malice, willfulness, or reckless disregard. Defendants' conduct meets all three criteria.

229.   Bloomberg's global wealth, influence, and investigative resources mean they    were uniquely positioned to avoid defamation—and chose not to.

230.   Punitive damages are necessary to punish Bloomberg, deter future misconduct, and restore Plaintiffs' reputational standing.

H. **TOTAL DAMAGES SOUGHT**

231.  Given the scale of Plaintiffs' business operations, reputational footprint, global investment negotiations, and ongoing losses, Plaintiffs seek:

- Compensatory damages:      $500,000,000+

- Consequential damages:      $200,000,000+

• Special damages:       $150,000,000+

• Punitive damages:      $200,000,000+

• Emotional distress damages:  $50,000,000+

232. Plaintiffs reserve the right to amend these figures as discovery progresses

and      additional damages are identified.

233. The   total   estimated   damages   exceed   **one   billion   dollars

($1,000,000,000+).**

XI. **CAUSES OF ACTION**

COUNT I — DEFAMATION PER SE

(Against All Defendants)

234. Plaintiffs incorporate by reference all preceding paragraphs as though fully

set      forth herein.

235. Defendants published false statements of fact concerning Plaintiffs,

including:

(a) that Plaintiff operated a "fake energy company,"

(b) that Plaintiff engaged in a fraudulent "scheme,"

(c) that Plaintiff ran a "pump-and-dump" operation,

(d) that Enerkon had "no legitimate business operations,"

(e) that Plaintiff deceived investors and manipulated stock prices.

236. These statements are factually false and defamatory per se under Michigan

law.

237. The statements accuse Plaintiffs of criminal conduct, fraudulent business practices, and professional dishonesty — categories that are defamatory per se.

238. Because Bloomberg's platform is relied upon by investors, institutions, governments, and corporate actors, the defamatory publication caused severe reputational and economic harm.

239. Plaintiffs are entitled to compensatory, special, consequential, and punitive damages.

Defendant Martina Barash personally authored and published the false and defamatory statements and is individually liable for defamation per se.

_COUNT II — FALSE LIGHT / INVASION OF PRIVACY_

(Against All Defendants)

240.  Plaintiffs incorporate all prior paragraphs.

241.  Defendants publicized statements that portrayed Plaintiffs in a false, misleading, and highly offensive manner, including presenting a civil judgment as criminal, characterizing Enerkon as "fake," and omitting key judicial facts.

242.  Defendants' publication implied criminality, deception, and fraudulent conduct, placing Plaintiffs in a false light before the public.

243.  Such depiction would be highly offensive to a reasonable person.

244.  Defendants acted with actual malice, knowing the statements were false or recklessly disregarding their truth.

245.  Plaintiffs were damaged and seek relief.

## COUNT III — BUSINESS DEFAMATION / TRADE LIBEL

(Against All Defendants)

246. Plaintiffs incorporate prior paragraphs.

247. Defendants published false statements injurious to the business reputation of Plaintiffs' companies — Diplomatic Trade Ltd, Diplomatic Trade Capital, and Thoor.org.

248. These statements harmed Plaintiffs' commercial standing, undermined investor confidence, and interfered with business operations.

249. Defendants' publication caused financial loss and harm to business expectancy.

250. Plaintiffs seek damages in excess of $1,000,000,000.

## COUNT IV — TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

(Against All Defendants)

251.  Plaintiffs incorporate prior paragraphs.

252.  Plaintiffs had valid business expectancies with:

- investors,

- sovereign entities,

- commercial partners,

- governmental ministries,

- financial institutions.

253.  Defendants knew, or should have known, of these business relationships.

254.  Defendants intentionally and improperly interfered with these expectancies by publishing defamatory and misleading statements.

255. Such interference caused cancellations of negotiations, withdrawal of

investors, and loss of long-standing business opportunities.

256. Plaintiffs seek full compensatory and punitive damages.

_COUNT V — NEGLIGENCE_

(Against All Defendants)

257. Plaintiffs incorporate prior paragraphs.

258. Defendants owed a duty to Plaintiffs to:

(a) investigate the truth of statements,

(b) avoid publishing false information,

(c) follow Bloomberg's internal journalistic standards,

(d) avoid causing foreseeable harm through negligent reporting.

259. Defendants breached that duty by publishing false and defamatory statements without verification or investigation.

260. Defendants' negligence caused foreseeable injury to Plaintiffs.

261. Plaintiffs seek damages.

## COUNT VI — GROSS NEGLIGENCE

(Against All Defendants)

262. Plaintiffs incorporate all prior paragraphs.

263. Defendants' conduct went far beyond ordinary negligence and constituted gross negligence because:

   (a) they failed to read the SEC judgments,

(b) they added terminology not supported by any record,

(c) they omitted key legal facts (appeal, bankruptcy stay),

(d) they published defamatory claims as facts,

(e) they ignored the civil nature of the case.

264.  Defendants' reckless disregard constitutes gross negligence as a matter of law.

265.  Plaintiffs seek compensatory and punitive damages.

## COUNT VII — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

(Against All Defendants)

266.  Plaintiffs incorporate prior paragraphs.

267. Defendants' conduct was extreme, outrageous, and beyond all bounds of decency, including:

    (a) branding Plaintiff as operator of a "fake" company,

    (b) implying criminal conduct where none existed,

    (c) global dissemination of damaging falsehoods,

    (d) omission of judicial facts to create a misleading narrative.

268. This conduct was intended to cause — or was done with reckless disregard of causing — severe emotional distress.

269. Plaintiff suffered severe emotional distress, humiliation, anxiety, and reputational devastation.

270. Plaintiffs seek compensatory and punitive damages.

*COUNT VIII — CIVIL CONSPIRACY*

(Against All Defendants)

271.   Plaintiffs incorporate all prior paragraphs.

272.   Defendants, including Doe Defendants 1–10, acted in concert to research, draft, edit, approve, and publish false statements about Plaintiffs.

273.   Each Defendant participated in a common plan or design to produce a false, sensationalized, and damaging narrative.

274.   Defendants knowingly combined to commit defamation, false light, and trade        libel, and are jointly and severally liable.

275.   Plaintiffs seek damages.

<u>COUNT IX — PUNITIVE DAMAGES</u>

(Against All Defendants)

276.   Plaintiffs incorporate all prior paragraphs.

277.   Defendants acted with:

  • actual malice,

  • willful disregard for truth,

  • reckless fabrication of statements,

  • omission of material judicial facts,

  • intent to sensationalize and harm Plaintiffs' reputation.

278.   Punitive damages are warranted to punish Defendants and deter similar conduct.

COUNT X — INJUNCTIVE RELIEF

(Against All Defendants)

279.  Plaintiffs incorporate prior paragraphs.

280.  Plaintiffs seek an order requiring Defendants to:

(a) retract the defamatory publication,

(b) publish corrective statements,

(c) remove the defamatory article from all platforms,

(d) notify third-party distributors, search engines, and archives of the
retraction.

281.  Plaintiffs have no adequate remedy at law because the defamatory content
continues to cause ongoing harm.

## COUNT XI — DECLARATORY RELIEF

(Against All Defendants)

282.  Plaintiffs incorporate all prior paragraphs.

283.  An actual controversy exists regarding the truth of Defendants' statements, the legality of the publication, and the ongoing harm caused.

284.  Plaintiffs seek a declaration that:

(a) Bloomberg's statements were false,

(b) Bloomberg's article is defamatory per se,

(c) Bloomberg acted with actual malice,

(d) Plaintiffs are entitled to damages and equitable relief.

285.  Declaratory relief is necessary to vindicate Plaintiffs' rights, restore their reputations, and establish the falsity of Defendants' statements.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Dr. Benjamin Ballout, Diplomatic Trade Ltd,

Diplomatic Trade Capital, and Thoor.org respectfully request that this

Court enter judgment in their favor and against all Defendants, jointly

and severally, and award the following relief:

A. COMPENSATORY DAMAGES

286. Award compensatory damages to Plaintiffs in an amount to be

proven at trial, but no less than **Five Hundred Million Dollars

($500,000,000)** for harm to reputation, standing, credibility, lost

commercial opportunities, and business injury.

B. SPECIAL AND CONSEQUENTIAL DAMAGES

287. Award special and consequential damages exceeding **Three Hundred

Million Dollars ($300,000,000)** for economic losses, broken contracts,

disrupted negotiations, lost governmental dealings, diminished enterprise

value, and    impairment of business expectancy.

C. EMOTIONAL DISTRESS DAMAGES

288. Award Plaintiffs damages for emotional distress, humiliation, anguish, and

reputational trauma in an amount no less than **Fifty Million Dollars

($50,000,000)**.

D. PUNITIVE DAMAGES

289. Award punitive and exemplary damages against all Defendants in

an amount sufficient to punish, deter, and condemn Defendants' willful,

malicious, reckless, and consciously indifferent conduct, but in no event

less than

**Two Hundred Million Dollars ($200,000,000)**.

E. DECLARATORY RELIEF

290. Enter a declaratory judgment stating that:

(a) Defendants' statements were false and defamatory;

(b) Plaintiffs did not engage in the criminal-like conduct described by Defendants;

(c) Defendants acted with actual malice; and

(d) Plaintiffs are entitled to damages and equitable relief.

F. INJUNCTIVE RELIEF

291. Issue temporary, preliminary, and permanent injunctive relief ordering that

Defendants:

(1) Remove the defamatory article from all Bloomberg platforms;

(2) Publish a full retraction and corrective statement;

(3) Notify Bloomberg Terminal users, global news partners, legal research

partners, and syndication outlets of the retraction;

(4) Retract the defamatory statements from any databases, archives,

search engines, and republished sources; and

(5) Refrain from further publication of false or misleading statements

regarding Plaintiffs.

G. ATTORNEYS' FEES AND COSTS

292. Award Plaintiffs reasonable attorneys' fees, expert-witness fees, investigative    costs, and litigation expenses pursuant to applicable law.


H. INTEREST

293. Award pre-judgment and post-judgment interest at the highest rate permitted

   by law.


I. ANY OTHER JUST AND PROPER RELIEF

294. Grant such additional and further relief as the Court deems just, equitable, and proper in the interests of justice.


**Plaintiffs request a trial by jury on all issues so triable.**


XIII. **JURY DEMAND**

295.   Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

296.   Plaintiffs respectfully request that all claims, damages, factual disputes, reputational injuries, and all issues relating to Defendants' defamatory conduct be submitted to a duly empaneled jury of the United States District Court.

XIV. SIGNATURE BLOCK

Respectfully submitted,

Dated: 12-1-2025



_____

Dr. Benjamin Ballout

Plaintiff, Pro Se


885 Penniman Ave, # 5421

Plymouth, Michigan 48170

Email: Benjamin.ballout@diplomatictrade.com

Phone: 7343520052

Plaintiff reserves the right to retain counsel who may file a formal notice of

appearance and amend this signature block accordingly.

**XV. EXHIBIT INDEX**

The following Exhibits are incorporated by reference into this Complaint

and are attached hereto or will be filed contemporaneously with this

action. Each Exhibit forms an integral part of Plaintiffs' claims and

demonstrates the falsity, malice, and recklessness underlying Defendants'

defamatory publication.

**EXHIBIT A**

Bloomberg Article titled "Fake Energy Company Stock Scheme…" as published by

Bloomberg Industry Group.

(Uploaded as: Bloomberg article.pdf)

**EXHIBIT B**

Side-by-Side Comparison Chart of SEC Judgment Language Versus Bloomberg

Statements (Section 9).

Demonstrates fabricated language, omissions, and mischaracterizations.

**EXHIBIT C**

SEC Litigation Release No. 26331 (June 20, 2025) obtained from the SEC website.

Shows civil nature of enforcement and absence of "fake company" terminology.

**EXHIBIT D**

SEC Complaint (2024) against Plaintiffs in case 9:24-cv-81170.

Used to demonstrate Bloomberg falsely treated allegations as adjudicated facts.

**EXHIBIT E**

SEC Final Judgment (Doc 50 – Final Judgment Against Ballout) entered June 11, 2025.

Used to show:

• civil nature,

• lack of factual findings,

• presence of bankruptcy enforcement limitations.

**EXHIBIT F**

SEC Final Judgment (Doc 51 – Final Judgment Against BALLOUT) entered June 11, 2025.

**EXHIBIT G**

SEC Remedies Order (Doc 49 – Order Granting Remedies).

Demonstrates the limited civil context of disgorgement and penalties.

**EXHIBIT H**

SEC Summary Judgment Order (Doc 48).

Shows no trial, no factual findings, and civil posture of the case.

**EXHIBIT I**

Bankruptcy Case Reopening Order (Chapter 7), Eastern District of Michigan.

Shows that SEC judgments are now the subject of active bankruptcy review.

**EXHIBIT J**

Bankruptcy Discharge Order (prior).

Shows protection from enforcement and the relevance of discharge violations.

**EXHIBIT K**

Image Proof — Bankruptcy Court Reopening Notice (uploaded as: BK

REOPEN.heic).

Confirms jurisdiction and enforcement limitations relevant to SEC judgment.

**EXHIBIT L**

Image Proof — Bankruptcy Discharge (uploaded as: BK DISHARGE.heic).

**EXHIBIT M**

Bloomberg's Corporate Ownership Structure (if available) showing Bloomberg

L.P., Bloomberg Industry Group, Bloomberg Law, and Bloomberg News

interrelation.

**EXHIBIT N**

Emails, correspondence, or communications showing reputational harm,

canceled meetings, withdrawn investor commitments, and interrupted

governmental dealings

(after Bloomberg publication).

**EXHIBIT O**

Plaintiffs' business records showing active negotiations, projects, MOUs, and

governmental engagements prior to the Bloomberg article.

**EXHIBIT P**

Evidence of lost investment capital, suspended transactions, and terminated

deals following the defamatory publication (financial summaries to be

provided).

**EXHIBIT Q**

Compliance or due-diligence flags triggered as a direct result of the Bloomberg article

(institutional alerts, email screenshots, KYC rejections, etc.).

**EXHIBIT R**

Plaintiff's side-by-side presentation of press, regulatory filings, and media

sources contradicting Bloomberg's defamatory statements.

**EXHIBIT S**

Screenshots of Bloomberg's republication, global indexing, and search engine

dissemination demonstrating global impact of defamation.

**EXHIBIT T**

Independent valuation assessments or evidence showing Plaintiffs'

business valuations and financial impact exceeding $1 billion.

**EXHIBIT U**

Affidavit or Declaration of Dr. Benjamin Ballout regarding damages,

reputational impact, emotional distress, and business harm.

**EXHIBIT V**

Any retraction requests, cease-and-desist letters, or communications sent to

Bloomberg, demonstrating knowledge of falsity and refusal to correct.

**EXHIBIT W**

Evidence of Bloomberg Terminal distribution and Bloomberg Law

syndication confirming global reach and reliance by sovereigns, banks, and

investors.

**EXHIBIT X**

SEC Public Whistleblower Notices (Award-Claim 2025-15, etc.)

Used to demonstrate SEC internal context and absence of findings described by

Bloomberg.

**EXHIBIT Y**

Public OTC, FINRA, and corporate records showing Enerkon Solar

International was a real public company with legitimate filings —

contradicting Bloomberg's "fake energy company" statement.

**EXHIBIT Z**

Reserved for additional exhibits obtained through discovery or supplemental

filings.

**XVII. CERTIFICATE OF COMPLIANCE**

   **AND CASE MANAGEMENT STATEMENT**

297.   Pursuant to Federal Rule of Civil Procedure 11, Local Rules of the

   United States District Court for the Eastern District of Michigan, and all

   applicable case-management requirements of this Court, Plaintiffs certify

   the following:

a. This Complaint is submitted in good faith, is warranted by existing

law or by a non-frivolous argument for extension, modification, or

reversal of existing law, and has evidentiary support or will have

evidentiary support after reasonable opportunity for discovery.

b. Plaintiffs certify compliance with E.D. Mich. L.R. 5.1, 7.1, 11.1,

83.11, and all formatting, captioning, spacing, and filing standards

applicable to civil pleadings.

c. Plaintiffs further certify that this pleading complies with the

Court's case-management guidelines regarding conciseness,

clarity, and structural organization. All factual allegations are

made upon information, belief, and investigation, and all

referenced exhibits will be filed contemporaneously or upon the

Court's request.

d. Plaintiffs certify that all known related actions have been identified

in the civil cover sheet and Local Rule 83.11 companion-case

statement, including:

(i) SEC v. Ballout et al., No. 9:24-cv-81170 (S.D. Fla.);

(ii) Related bankruptcy proceedings in the Eastern District of

Michigan (Chapter 7, reopened);

(iii) Ballout v. Radio Free Europe / Todd Prince et al.

(E.D. Mich.); and

(iv) Any future related actions discovered through discovery

will be promptly disclosed.

e. Plaintiffs further certify under Rule 5.2 and Local Rule 5.3 that no

protected personal data identifiers are included herein other than

those permitted or required by the rules, and any necessary

redaction will be performed prior to public docketing.

f. Plaintiffs certify compliance with the Court's electronic filing

requirements and will submit all future filings through the

CM/ECF system unless otherwise ordered.

298.   Plaintiffs reserve the right to amend this Certificate of Compliance

to address any additional case-management orders, standing orders,

or judge-specific practices issued after the commencement of this

action.


Respectfully submitted,

/s/ Dr. Benjamin Ballout

Dr. Benjamin Ballout, Pro Se

885 Penniman Ave, #5421

Plymouth, MI 48170

Email: Benjamin.ballout@diplomatictrade.com

Phone: 7343520052