UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BENJAMIN BALLOUT,

       Plaintiff,

v.

BLOOMBERG L.P., BLOOMBERG
FINANCE L.P., BLOOMBERG
INDUSTRY GROUP, BLOOMBERG
NEWS, MARTINA BARASH,
ANDREW HARRIS, and JOHN DOE
1-10,

       Defendants.

_____/

Case No.  4:25-cv-13879
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No.  26) AND TO *SUA SPONTE* DISMISS JOHN DOE DEFENDANTS[1]

I.      Introduction

This is a defamation case under diversity jurisdiction.  Plaintiff Benjamin

Ballout, proceeding *pro se*, is suing the above-captioned defendants, alleging that

---

[1] Upon review of the papers, the Court deems this matter appropriate for decision without oral argument.  *See* E.D. Mich. LR 7.1.  A notice of determination without oral argument was filed on May 11, 2026.  (ECF No. 32).

1

one of their articles "permanently damaged Plaintiffs' reputations around the world." (ECF No. 1, PageID.12).[2]  Pretrial proceedings have been referred to the undersigned under 28 U.S.C. § 636.  (ECF No. 29).  Before the Court is defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to properly serve under Fed. R. Civ. P. 12(b)(5).  (ECF No. 26).  The motion is fully briefed (ECF Nos. 27, 28), and ready for consideration. For the reasons that follow, it is RECOMMENDED that defendants' motion be GRANTED based on a failure to state a claim.  It is further RECOMMENDED that John Doe defendants be DISMISSED *SUA SPONTE*.  If this recommendation is adopted, the case would be closed.

## II.   Background

Ballout filed his complaint on December 1, 2025.  (ECF No. 1).  The complaint alleges that an article published by defendants titled "Fake Energy Company Stock Scheme Yields Civil Penalties to SEC" (the Article) caused "immediate, foreseeable, and permanent harm due to the global nature of Bloomberg's platform and its reputation as an authoritative financial news provider." (*Id.*, PageID.7, 92).  The Article summarized the SEC's allegations against Ballout, the Florida Court's findings in the SEC case against Ballout, and

---

[2] Ballout's use of "Plaintiffs," plural, is curious given that he is the only plaintiff listed on this case.  This will be addressed briefly below.

the penalties assessed against him and his co-defendants.  (ECF No. 8, PageID.170-171, Bloomberg Law News Article).

On September 24, 2024, the SEC filed a civil complaint against Ballout and two other individuals in the U.S. District Court for the Southern District of Florida alleging that Ballout owned an energy company named Enerkon Solar International, Inc. (Enerkon) and made a number of fraudulent misrepresentations or material omissions about the company for the sole purpose of pumping the company's stock price.  (*SEC v. Ballout, et al.*, Case No. 9:24-cv-81170 (S.D. Fla.), ECF No. 26-2, PageID.376, SEC Complaint).  The SEC alleged that Ballout "knowingly and severely recklessly engaged in a scheme to inflate the price of Enerkon's publicly traded stock" by authoring and approving "false and misleading statements and omissions in Enerkon's press releases and public filings."  (*Id.*, PageID.381).  The SEC suspended trading in Enerkon securities on June 22, 2021.  (*Id.*, PageID.382).  The SEC moved for summary judgment. Ballout proceeded *pro se*.  The district court granted the SEC's motion for summary judgment and entered a judgment against Ballout and one of the other defendants.  *See* ECF No. 26-3, PageID.399-409 – Order on Motion for Summary Judgment and ECF No. 26-4, PageID.410-423 – Order on Motion for Remedies and for Entry of Final Judgments.

3

Ballout says that in the Article, defendants published statements they "knew to be false, or, at the very least, acted with reckless disregard for their truth, omitting critical judicial context and fabricating criminal implications that did not and do not exist." (ECF No. 1, PageID.10).  Ballout is seeking to recover $500,000,000+ in compensatory damages, $200,000,000+ in consequential damages, $150,000,000+ in special damages, $200,000,000+ in punitive damages, and $50,000,000+ in emotional distress damages.  (*Id.*, PageID.102).

Liberally construed, Ballout's complaint alleges that Bloomberg, L.P. and its employees intentionally published false information or demonstrated extreme recklessness in publishing the Article, resulting in at least $1 billion in damages. More specific allegations will be discussed below as necessary.

III.   Legal Standard

A.    Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.].'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009).

Finally, in ruling on a motion to dismiss, the Court may consider documents which are referenced in the complaint and integral to a plaintiff's claims. *Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp. 3d 1090, 1097 (S.D. Ohio 2022); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Here, the Court has considered the court filings in the SEC case and the Article, which are central to Ballout's claims.

### B.   Rule 12(b)(5)

Under Federal Rule of Civil Procedure 12(b)(5), a court may dismiss a complaint for "insufficient service of process." "Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 353 (6th Cir. 2003). "Where service is ineffective, a court has discretion to either dismiss the action or quash service and retain the case. *Young's Trading Co. v. Fancy Imp., Inc.*, 222 F.R.D. 341, 342-43 (W.D. Tenn. 2004). Courts construe provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance.'" *Meyer v. Timothy E. Baxter & Associate*s, P.C., No. 18-10058, 2018 WL 1858182, *2 (E.D. Mich. Apr. 18, 2018) (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). "In exercising its discretion under Rule 4, a court may consider whether the plaintiff's error resulted from innocent mistake or inexcusable neglect." *Meyer*, at *2. Dismissal may not be warranted "in light of

6

plaintiff's good faith effort to effect proper service of process, plaintiff's substantial compliance with the service rules, and defendant's inability to show lack of notice or prejudice other than the inherent prejudice in having to defend this lawsuit." *Id*.

IV.   Discussion

A.   Failure to State a Claim for Relief

1.   Defamation (Count I)

Defendants argue that Ballout's defamation claim should be dismissed because it fails to identify any factually inaccurate information that they reported and because Ballout hasn't shown that there was malice in the creation and publication of the Article.  The undersigned agrees.

Under Michigan law, to state a claim of defamation, a plaintiff must allege: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication." *Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 668 (E.D. Mich. 2015). "Whether a statement is actually capable of defamatory meaning is a preliminary question of law for the court to decide." *Ghanam v. Does*, 845 N.W.2d 128, 143 (Mich. Ct. App. 2014).

7

Here, Ballout has not plausibly alleged that any of the statements regarding him were false, that the information was unprivileged, or that the publisher was negligent.  The alleged defamatory statements fail to satisfy the requirements of defamation for a few key reasons.

a.      Reporting on Court Filings is Privileged Under MCL 600.2911(3)

First, MCL 600.2911(3) provides that "[d]amages shall not be awarded in a libel action for the publication . . . of a fair and true report of matters of public record, [or] a public and official proceeding . . . or record generally available to the public. . . ."  This includes the right to report on court proceedings and documents. *See Hayes v. Booth Newspapers*, Inc., 295 N.W.2d 858, 866 (Mich. Ct. App. 1980) (report on progress of trial); *Peisner v. Detroit Free Press, Inc.*, 266 N.W.2d 693, 698 (Mich. Ct. App. 1978) (privilege properly invoked for editorial on trial, given "the public's interest in the administration of justice").  The privilege includes reporting on any court filing or statement, including complaints, judicial opinions, and orders.  *See Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180, 187–88 (6th Cir. 2003) ("[A] party's publication of any actual court filing or statement made in a judicial proceeding is privileged because the public has a legitimate interest in accessing and viewing that type of information.").  "A verbatim repetition of the matters of public record is not required for the privilege to apply." *Kmart Corp. v. Areeva, Inc.*, 2005 WL 2290678, at *3 (E.D. Mich. Sept. 20, 2005)

8

(citing *Koniak v. Heritage Newspapers*, Inc., 476 N.W.2d 447, 450 (Mich. Ct. App. 1991).  The reporting merely needs to "substantially represent" the matter contained in the court record.  *See Bedford v. Witte*, 896 N.W.2d 69, 73 (Mich. Ct. App. 2016).

Here, Bloomberg obtained all of its information directly from the court filings in Ballout's case against the SEC.  The Article substantially represented the Florida Courts' findings by directly quoting and summarizing the document, meaning the reporting falls squarely within Michigan's official proceedings privilege and is not actionable for defamation.

Ballout's complaint listed numerous statements that he believed were defamatory, but they are all accurately quoted or summarized from court filings. For example, Ballout claimed that these two statements were defamatory: (1) "Purported energy company" (ECF No. 1, PageID.52), and (2) "Company without employees or legitimate business operations."  (*Id.*, PageID.53).  These statements are not defamatory, however, as the reported court filings directly stated that "Enerkon was a penny-stock company that had no employees (aside from Ballout) or legitimate business operations" (ECF No. 26-2, PageID.376) and "Ballout was the controlling shareholder, CEO, CFO, and Chairman of the Board of Directors for Enerkon Solar International, Inc. ('Enerkon'), a publicly traded penny-stock

company purportedly involved in power plants" (ECF No. 26-3, PageID.400, Florida Court Order I).

Additionally, Ballout claims that the statements "Stock scheme", "pump-and-dump scheme" and "[h]e pumped up the company's stock price" are defamatory.  (ECF No. 1, PageID.52-53).  This is not the case; defendants took these statements verbatim, or close to verbatim, from the court filings.  The filings themselves state "[t]his case arises out of an unlawful 'pump-and-dump' scheme" and "Ballout sought to inflate Enerkon's stock price to qualify the company for listing on the Nasdaq stock exchange."  (ECF No. 26-3, PageID.399; ECF No. 26-4, PageID.412, Florida Court Order II).  Both the Article and court filings use the language of "pump and dump," "scheme," and discuss Ballout attempting to raise the company's stock price.

Ballout also alleges that "Bloomberg repeatedly implied criminal wrongdoing by using terms such as 'scheme,' 'forged,' 'fake,' and 'barred,' despite the SEC case being strictly civil."  (ECF No. 1, PageID.54).  Not so.  The Article's title uses the word "civil" and does not make any criminal accusations against Ballout.  (ECF No. 8, PageID.170-171).  Additionally, the district court's order on summary judgment stated that the SEC had "supplied uncontroverted evidence that Ballout issued public filings which were false or misleading . . . ." (ECF No. 26-3, PageID.405) and "each Defendant's violations involved fraud,

10

deceit, manipulation, or deliberate or reckless disregard for a regulatory requirement . . . ." (*Id.* at PageID.403). Bloomberg's statements merely reflect the court filings' finding that the defendants had engaged in fraud, deceit, and manipulation.

Each of the alleged defamatory statements is, if not taken verbatim from the judicial filings, nevertheless an accurate report of the filings. That is all that is required. *Bedford*, 896 N.W.2d at 73. The statements are thus subject to the privilege under MCL 600.2911(3).

b.      The Article is Substantially True

Second, the defamation claim fails because a plaintiff can state a defamation claim only for statements that are materially false. *Rouch v. Enquirer & News of Battle Creek, Michigan*, 440 Mich. 238 (1992). The courts do not hold the media to a standard of literal and absolute accuracy in every detail. *Id.* Instead, if the "gist" or "sting" of the article is true, Ballout cannot prevail. *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767-68 (Mich. Ct. App. 1987).

As discussed above, the statements in the Article are true and accurate as taken from the court filings. There may be minor discrepancies in the Article, but the *gist* does not give a reader a different impression than the public record. *See Koniak*, 476 N.W.2d at 450. The gist of the Article is that a judge in the Southern District of Florida ordered Ballout to pay approximately $461,000 in civil penalties

11

because of his fraudulent pump-and-dump scheme.  (ECF No. 8, PageID.170-171).

The gist of the public record is the same.  There is nothing in the Article that would

create a different understanding for the reader than that produced by the court

filings.  To the extent Ballout complains of the use of the term "fake," the

requirement that the Article be truthful is still satisfied, as it reported the SEC

allegation that Enerkon had no employees or legitimate business operations and

that the court agreed, finding Enerkon to be a "purported energy company."  (ECF

No. 26-3, PageID.400).  Taken as a whole, the Article accurately reflects the

court's findings to enough of an extent that it is not actionable.  *See Hawkins v.*

*Mercy Health Servs., Inc.*, 583 N.W.2d 725, 734 (Mich. Ct. App. 1998) (minor

differences are immaterial if "the literal truth would have produced the same

effect").

Alternatively, the Article's title including the phrase "Fake Energy

Company," is at most rhetorical hyperbole.  "Rhetorical hyperbole or mere

exaggerations that cannot be interpreted as stating actual facts cannot serve as the

basis for a defamation claim."  *Lento L. Grp., P.C. v. Lewis*, No. 24- 10031, 2024

WL 2963775 (E.D. Mich. June 11, 2024) at *2.  Other courts have found the term

"fake" to be non-actionable rhetorical hyperbole.  *See Dilworth v. Dudley*, 75 F.3d

307, 310 (7th Cir. 1996) (finding "fake" and "phony" to be non-defamatory

hyperbole terms); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724,

728 (1st Cir. 1992) (statements that the plaintiff's theater production was "fake" or "phony" could not be objectively verified "since those adjectives admit of numerous interpretations.").

In the Article's title, Bloomberg used the word "fake" as a hyperbolic turn of phrase to describe a company with no employees or business operations. "Fake" can be interpreted in too many ways and is not, therefore, an actionable statement of fact. If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Garvelink v. Detroit News*, 522 N.W.2d 883, 886 (Mich. Ct. App. 1994). Therefore, the use of the term is non-actionable.

> c.    Defamation Claims May be Dismissed in the Pleading Stage

Ballout also argues that his claims involve questions of fact that are unsuitable for resolution on a motion to dismiss. But federal courts routinely dismiss such claims at the pleading stage. *See e.g.*, *Lento L. Grp.*, *P.C. v. Lewis*, No. 24- 10031, 2024 WL 2963775 (E.D. Mich. June 11, 2024); *Cambridge Dental*, *LLC* v. *JPMorgan Chase Bank* N.A., No. 20-12068, 2020 WL 7075263 (E.D. Mich. Dec. 3, 2020); *Zysk* v. *Brennan*, No. 18-10639, 2019 WL 1281959 (E.D. Mich. Mar. 20, 2019).

As explained above, the alleged defamatory statements here are non-actionable for three independent reasons: (1) the statements are protected by

Michigan's "fair report" privilege; (2) the statements are at least substantially true, if not completely true; and (3) alternatively, at least one of the challenged statements—referring to Ballout's company as "fake" in the article's title—is non-actionable rhetorical hyperbole. Ballout cites *Northland Wheels Roller Skating Ctr. v. Detroit Free Press*, 539 N.W.2d 774 (Mich. Ct. App. 1995) to argue that his claim should not be dismissed at this stage. But in that case, the Michigan Court of Appeals affirmed the trial court's dismissal pursuant to MCR 2.116(C)(8)—the Michigan equivalent of Fed. R. Civ. P. 12(b)(6)—finding that the "plaintiff's defamation claims were so clearly unenforceable as a matter of law that no factual development could possibly justify a recovery." *Northland Wheels*, 539 N.W.2d at 780. The same principle applies here, and dismissal at this stage is appropriate.

### 2. False Light (Count II)

To maintain an action for false-light invasion of privacy, a plaintiff must show that the defendants (1) broadcast to the public in general, or to a large number of people, (2) information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false, and (3) placed the plaintiff in a false position." *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 448-49 (Mich. Ct. App. 2018) (quoting *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 721 (Mich. Ct. App. 1993)). Further, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter

14

and the false light in which the plaintiff would be placed." *Detroit Free Press, Inc., v. Oakland Co. Sheriff,* 418 N.W.2d 124, 128-29 (Mich. Ct. App. 1987).

A plaintiff may not simply relabel a defamation claim as one for false light to avoid constitutional and common law hurdles. As stated by the Michigan Court of Appeals,

> The Supreme Court has made it clear that the above limitations on actionability (statements must be provable as false, statements must be understandable as stating actual facts about the plaintiff, and, in the case of public-official or public-figure plaintiffs, the plaintiffs must prove actual malice by clear and convincing evidence) are First Amendment limitations. *Hustler Magazine,* [*Inc. v. Falwell,* 485 U.S. 46, 50 (1988)]. It is clear that these limitations are not exclusive to defamation claims. *Id.* We conclude that these limitations apply to all of plaintiff's claims in this case. Thus, because all of plaintiff's claims are based on the same statements, and because she cannot overcome the First Amendment limitations regarding these statements, summary disposition was properly granted with regard to all of plaintiff's claims.

*Ireland v. Edwards*, 584 N.W.2d 632, 640-41 (Mich. Ct. App. 1998) (dismissing claims of false light, invasion of privacy, and intentional infliction of emotional distress that were based on the same statements as the dismissed defamation claim); *see also Dupuis v. City of Hamtramck*, 502 F. Supp. 2d 654, 659 (E.D. Mich. 2007) (dismissing false light claim "for the same reasons that invalidate[d] [the plaintiff's] defamation claim."). Here, the same statements that fail to support a defamation claim cannot, as a matter of law, be the basis of a false light claim.

Additionally, a false light claim itself requires that "publicity must lift the curtain of privacy on a subject matter that a reasonable man of ordinary

15

sensibilities would find offensive and objectionable." *Reed v. Ponton*, 166 N.W.2d 629, 630 (Mich. Ct. App. 1968); *see also Cetera v. Mileto*, 995 N.W.2d 838, 456-59 (Mich. Ct. App. 2022) (dismissing claim because the speech at issue related to public, not private lives of plaintiffs).  The statements Bloomberg made about Ballout concerned public conduct, as described in a public court filing, not private affairs, and thus cannot support a false light claim.

### 3.      Business Defamation (Count III)

For a business defamation claim to be successful, the plaintiff must prove the following four elements: "1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod)." *Champion Laboratories, Inc. v. Parker-Hannifin Corp.*, 616 F. Supp. 2d 684 (E.D. Mich. 2009) (quoting *Frohriep v. Flanagan*, 754 N.W.2d 912, 919 (Mich. Ct. App. 2008), *rev'd in part*, 483 Mich. 920 (2009)).  A corporation may assert a defamation action if "the matter *tends to prejudice it in the conduct of its business or to deter others from dealing with it. . . .*" *Northland Wheels*, 539 N.W.2d at 780 (quoting *Heritage Optical Center, Inc. v. Levine,* 359 N.W.2d 210, 212 (Mich. App. 1984)).

16

Here, Ballout is the only named plaintiff.  The complaint references business losses to Ballout's companies Diplomatic Trade Ltd., Diplomatic Trade Capital, and Thoor.org, but they are not listed as plaintiffs, and claims in this case cannot be brought on their behalf.  (ECF No. 1, PageID.106-107).  Additionally, the Article discusses Ballout and his co-defendants in the SEC proceedings and does not mention any of the companies that Ballout claims were defamed.  "[T]o prevail on a defamation claim, a plaintiff must allege and establish that the defendant published a false and defamatory statement concerning *that* plaintiff."  *Hazime v. Fox TV Stations, Inc*., 2013 WL 4483485, at *7 (E.D. Mich. Aug. 19, 2013) (emphasis added).  There are no statements concerning the businesses in the Article; therefore, there is no claim for business defamation.  Furthermore, Ballout cannot represent the interests of a corporation *pro se*; corporations must be represented by counsel.  *See S.E.C. v. Merklinger*, 489 F. App'x 937, 939-40 (6th Cir. 2012); *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.").

### 4.     Tortious Interference (Count IV)

Count IV alleges tortious interference with business relations.  (ECF No. 1, PageID.107-109).  Ballout alleges he had valid business expectancies with

17

investors, sovereign entities, commercial partners, governmental ministries, and financial institutions.  (*Id.*, PageID.108).  To succeed on a claim of tortious interference with business expectancy, a plaintiff must establish (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the plaintiff."  *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679 (Mich. App. 2010).  To satisfy the third element, the plaintiff must establish that the defendant "acted both intentionally and either improperly or without justification."  *Id*.  If the defendant's act was motivated by legitimate business reasons, then the act does not "constitute improper motive or interference."  *Id*. at 696.  Finally, the plaintiff must demonstrate that the defendant "did something illegal, unethical, or fraudulent."  *Id.*

Here, none of the elements are satisfied and so the claim must fail.  Ballout claims to have had expected business losses with investors, sovereign entities, commercial partners, governmental ministries, and financial institutions.  (ECF No. 1, PageID.108).  To satisfy the element of a "valid business expectancy," Plaintiffs must show that they had more than a "subjective expectation of entering into a [business] relationship."  *See Compuware Corp. v. IBM,* 259 F.Supp.2d 597, 604 (E.D. Mich. 2002) (citing *Grand Rapids Plastics, Inc. v. Lakian*, No. 96-CV-

18

73615DT, 1997 WL 33488307, at *12 (E.D. Mich. Nov. 14, 1997), *aff'd,* 188 F.3d 401 (6th Cir. 1999)).  "The expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Lakian*, at *12 (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 348 (Mich. Ct. App. 1984).  Ballout, however, has failed to name a specific person, company, or even country that he was doing business with and has not provided any evidence of concrete or legitimate expected business dealings.  His assertion is nothing more than wishful thinking.  Ballout also alleges that defendants "knew, or should have known, of these business relationships."  (ECF No. 1, PageID.108).  However, as stated above, Ballout did not allege sufficient facts to infer that he had business relations, so there are no business relationships that the defendants could have known about.  Building on that, if there were no business relationships for the defendants to know about in the first place, they could not have intentionally terminated or interfered with anything, and there are no quantifiable damages to Ballout.  Thus, Ballout's allegations fail to establish the elements of tortious interference.

> 5.    Negligence and Gross Negligence (Counts V and VI)

For a negligence claim to be successful, "a plaintiff must satisfy the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Powell-*

19

*Murphy v. Revitalizing Auto Communities Env't Response Tr.*, 964 N.W.2d 50, 55-56 (Mich. Ct. App. 2020) (quoting *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651 (2012)). Regarding gross negligence, "the Michigan Supreme Court has barred all claims of common-law gross negligence under Michigan law except in certain contexts in which Michigan law exculpates actors for mere negligent conduct." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009).

Here, both of Ballout's negligence claims turn entirely on whether defendants published defamatory statements. This is simply a relabeling of the defamation claim analyzed above, which does not state an independent claim. *Ireland*, 584 N.W.2d at 641 (holding that if a defamation claim fails to comply with First Amendment limitations, the other related claims will also fail). Ballout's negligence claims rest solely on whether defendants published defamatory statements, which, as discussed above, they did not. *See Holland v. Wood TV 8,* No. 349803, 2020 WL 4382130 (Mich. App. July 30, 2020) (upholding dismissal of tort claims that "were premised on the same underlying facts and statements as [the plaintiff's] defamation claim"); *Johnson v. Millennium Treatment Servs., L.L.C.*, No. 271705, 2007 WL 1263981, at *5 (Mich. Ct. App. May 1, 2007) (holding that negligence claim that relied on "allegations of defamatory conduct and intentional infliction of emotion distress" was properly dismissed where the defamation and intentional infliction of emotional distress

claims were unsupported).  Because Ballout cannot state a claim for defamation, the statements cannot, as a matter of law, support negligence or gross negligence claims.

      6.      Intentional Infliction of Emotional Distress (Count VII)

"Under Michigan law, the elements of intentional infliction of emotional distress ('IIED') are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4) that the emotional distress was severe." *Gilliam*, 147 F. Supp. 3d at 668. "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of emotional distress." *Bhama v. Bhama*, 425 N.W.2d 733, 736 (Mich. Ct. App. 1988).  This requires the plaintiff to show more than "hurt feelings." *McCahill v. Commercial Union Ins. Co.*, 446 N.W.2d 579, 584 (Mich. Ct. App. 1989).

In *Roberts v. Auto-Owners Ins. Co.*, the Michigan Supreme Court held that an IIED claim requires "conduct that has been so outrageous in character and so extreme in degree as to be beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." 422 Mich. 594, 602-03 (1985).  Ballout's complaint fails to describe how defendants' conduct was

21

extreme and outrageous in character.  Defendants' conduct of publishing an article based on public court filings does not approach the aberrant behavior necessary to state a claim.  Additionally, Ballout has not alleged with required specificity that defendants intended to or recklessly caused severe emotional distress.  And furthermore, an IIED claim with entirely overlapping allegations as a defamation claim is limited by the same First Amendment limitations that foreclose Ballout's defamation claim in this case.  *See Ireland*, 584 N.W.2d at 640-41 (citing *Hustler Magazine*, 485 U.S. at 50); *Kelly v. The Daily Beast Co. LLC*, No. 1:22-cv-482, 2022 WL 17546616 (W.D. Mich. Dec. 9, 2022) ("Where a plaintiff's claim of IIED is premised on the same statements as a defamation claim, the IIED claim is subject to the same First Amendment limitations as the defamation claim.").

### 7.      Civil Conspiracy (Count VIII)

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992).  Importantly, civil conspiracy is not an independent claim, and the plaintiff must "prove a separate, actionable tort." *Early Detection Ctr PC v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986).  Additionally, employees of a company cannot be liable for a conspiracy under the Civil Rights Act, 42 U.S.C. § 1985(3), unless the

challenged activity takes place outside the course of employment. *Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837 (6th Cir. 1994).

Here, for the reasons explained above, Ballout has failed to plead a separate, actionable tort. In addition, defendants are part of the same collective entity, Bloomberg, and cannot therefore conspire with each other. The above exception to this rule does not apply because the challenged activity in this case occurred in the course of employment; publishing news articles is precisely the type of business Bloomberg conducts. Therefore, Ballout's civil conspiracy claim should be dismissed.

8.      Other Claims for Relief (Counts IX, X, XI)

Lastly, Ballout brings claims for punitive damages and injunctive and declaratory relief. (ECF No. 1, PageID.113-115). As defendants note, a request for injunctive relief is not an independent cause of action. *Richard v. Heller,* 957 N.W.2d 357, 368 (Mich Ct. App. 2020) ("an injunction is a remedy, not an independent cause of action."). "[A] remedy must be supported by an underlying cause of action." *Id.* Because Ballout has not stated any viable claims for the reasons set forth above, "equitable relief in the form of an injunction is unavailable." *Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008). Additionally, when a plaintiff's "substantive claims fail as a matter of law, so too

23

does his claim for a declaratory judgment." *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023).

Similarly, punitive damages are not an independent cause of action and "are generally not recoverable in Michigan" with the exception of when "they are expressly authorized by statute." *Casey v. Auto Owners Ins., Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006). When a plaintiff does not identify "any statute that would grant them punitive damages," dismissal of a request for punitive damages is proper. *Id*. Here, Ballout's "claim" for punitive damages does not identify any statute, and he therefore cannot recover punitive damages.

For these reasons, Ballout's claims for punitive damages and for injunctive and declaratory relief should be dismissed.

### B. Improper Service Under Rule 12(b)(5)

#### 1. Legal Standard

Service of process is governed by Fed. R. Civ. P. 4. To serve a domestic corporation, a plaintiff must either (i) personally deliver a copy of the summons and complaint to its officer, managing or general agent, or agent authorized to accept service of process, while also mailing a copy of the summons and complaint, or (ii) comply with Michigan law "for serving a summons in an action brought in [its] courts of general jurisdiction." Fed. R. Civ. P. 4(h)(1).

24

Michigan law provides for service on a foreign corporation by: (i) personally serving the Summons and Complaint on "an officer or the resident agent"; or (ii) personally serving the Summons and Complaint on "a director, trustee, or person in charge of an office or business establishment of the corporation and sending a copy of the complaint by registered mail, addressed to the principal office of the corporation." Mich. Ct. R. 2.105(D).

Service on an individual in the United States may be made by: (1) following state law for serving a summons . . . ; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e).

Michigan law provides for service of an individual as follows: (1) delivering a summons and a copy of the complaint to the defendant personally; or (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. MCR 2.105(A).

2. Service of Corporate Defendants

Ballout says that, on December 29, 2025, he served the Summons and Complaint on Bloomberg Finance L.P., Bloomberg L.P., and Bloomberg Industry

25

Group, Inc. via "FedEx 2Day delivery upon the duly authorized registered agent for the Corporate Defendants." (ECF No. 17, PageID.286). He says "P. Sisofo" signed for the FedEx package on December 29, 2025, in Wilmington, Delaware. (*Id.*, at PageID.293-294). Ballout did not arrange for personal service of the summons and complaint. *See Etherly v. Rehabitat Sys. of Mich.*, 2013 WL 3946079, at *1 (E.D. Mich. July 31, 2013) (stating that service on a corporation by mail alone is insufficient); *Lopez v. Trans Union LLC*, 2025 WL 3503112, at *2 (E.D. Mich. Dec. 4, 2025) (finding service to be improper because plaintiff failed to offer documentation from a process server). Therefore, Ballout has failed to properly serve the corporate defendants. Nevertheless, because they have moved to dismiss Ballout's claims for failure to state a cause of action, the undersigned does not recommend dismissal on this ground. Dismissal is appropriate for failure to state a claim for the reasons set forth above.

### 3.      Service on the Individual Defendants

Ballout says that he served Martina Barash and Andrew Harris, the individual defendants, "by delivering the Summons and Complaint" to the corporate defendants' "same authorized registered agent address" in Delaware. (ECF No. 17, PageID.287). Ballout also says he served these defendants by sending the summons and complaint via FedEx to Bloomberg Industry Group, Inc.'s "Principal Office" at 180 S. Bell Street, Arlington, VA 22202. (*Id.*, at

PageID.295).  He has attached FedEx receipts showing that the service documents were sent to the Arlington location, not Delaware, where Bloomberg's registered agent is located.  (*Id.*, at PageID.299.)

Barash and Harris did not authorize Bloomberg's registered agent to accept service on their behalf.  *See* Fed. R. Civ. P. 4(e).  Additionally, service on Barash and Harris at Bloomberg's "Principal Office" fails because the rules require Ballout to personally serve them or send the summons and complaint by registered or certified mail.  *Robinson v. Genesee Cnty. Sheriff's Dept.*, No. 16-CV-13805, 2017 WL 2403572 (E.D. Mich. June 2, 2017) ("[N]either the Federal Rules of Civil Procedure nor Michigan rules allow for an individual to be served through his employer.").

Because Ballout did not properly serve any of the defendants, they could be dismissed for failure to serve.  *See Thomas v. Navient Sols.*, Inc., 2018 WL 3141946, at *3 (E.D. Mich. June 27, 2018).  However, as with the corporate defendants, Barash and Harris have moved to dismiss Ballout's claims for failure to state a claim and the undersigned has recommended dismissal on this ground. Therefore, the undersigned does not recommend dismissal for failure to properly serve.

V.     John Doe Defendants

27

If the above recommendation is adopted, the only remaining claims would be against ten John Doe defendants.  These individuals have not been identified or served with the complaint.  Under Federal Rule of Civil Procedure 4(m), Ballout had ninety days from the filing of the complaint to serve each defendant.  Ballout has not identified any of the John Does and the time for service has passed.  Because they have not been timely served, the undersigned recommends they be dismissed.  *See Porter v. Nationstar Mortg. Servs.*, No. 215CV02578SHMEGB, 2017 WL 2493150, at *2 (W.D. Tenn. June 9, 2017).  Further, dismissal of unknown defendants is proper where, such as here, no claims remain against named defendants.  *See Ruff v. Corr. Med. Servs.*, No. 07-15443-BC, 2009 WL 1384158, at *1 (E.D. Mich. May 13, 2009) (citing *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001)); *Adams v. Hyman Lippitt, P.C.*, No. 05-72171, 2007 WL 2571955, at *1 (E.D. Mich. Sept. 5, 2007)).

## VI.    Conclusion

For the reasons stated above, it is RECOMMENDED that defendants' motion to dismiss based on a failure to state a claim (ECF No. 26) be GRANTED.  It is further RECOMMENDED that John Doe defendants be DISMISSED *SUA SPONTE*.  If this recommendation is adopted, the case would be closed.

Dated: July 9, 2026                           s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

28

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without

29

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager