UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN BALLOUT,<br>Plaintiff,<br><br>v.<br><br>BLOOMBERG L.P. et al.,<br>Defendants. | Case No. 25-13879<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 34); ADOPTING REPORT AND RECOMMENDATION (ECF NO 33); AND GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 26)**

## I. Introduction

Plaintiff Benjamin Ballout ("Ballout"), proceeding pro se, initiated this civil action against defendants Bloomberg L.P., Bloomberg Finance L.P., Bloomberg Industry Group, Bloomberg News, Martina Barash ("Barash"), Andrew Harris ("Harris") (together "Defendants), and John Does 1-10 ("Doe Defendants"), bringing claims of "defamation per se, false light, business defamation, trade libel, tortious interference with business expectancy, negligence, gross negligence, intentional infliction of emotional distress, civil conspiracy, and injunctive and declaratory relief . . . ." ECF No. 1,

PageID.3 (capitalization corrected). This matter was referred to the assigned magistrate judge for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1). ECF No. 29.

Defendants moved to dismiss Ballout's complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) & (6). ECF No. 26. The motion was fully briefed, ECF Nos. 27, 28, and the magistrate judge issued a Report and Recommendation ("R&R") recommending the Court grant defendants' motion and *sua sponte* dismiss the Doe Defendants. ECF No. 33. Ballout filed timely objections to the R&R, Defendants filed a response, and Ballout filed a reply. ECF Nos. 34, 35, 36. This matter is now ripe for determination.

## II. Background

This case arises out of the U.S. Securities and Exchange Commission's ("SEC") civil complaint filed against Ballout in the U.S. District Court for the Southern District of Florida (the "Florida Court"). The SEC alleged Ballout was the owner of Enerkon Solar International, Inc. ("Enerkon"), an energy company, and "made a number of fraudulent misrepresentations or material omissions about the company for the sole purpose of pumping the company's stock price." ECF No. 33, PageID.559; *see also SEC v. Ballout, et al*., Case No. 24-cv-81170 (S.D. Fla.). The SEC

suspended trading in Enerkon securities in June 2021. *Id.* Ballout represented himself pro se in the Florida Court action. The SEC moved for summary judgment, which the district court granted, and a judgment was entered against Ballout and one other defendant. *Id.*

After the judgment was issued, Defendants published an article titled "Fake Energy Company Stock Scheme Yields Civil Penalties to SEC" ("the Article"). "The Article summarized the SEC's allegations against Ballout, the Florida Court's findings in the SEC case against Ballout, and the penalties assessed against him and his codefendants." *Id.* at PageID.558–59. Ballout sued Defendants and alleged that Defendants knew the statements published in the article were false and omitted "critical judicial context" and fabricated "criminal implications" that did not exist. *Id.* at PageID.559. Ballout seeks $1,000,000,000 in damages.

Defendants moved to dismiss Ballout's complaint for insufficient service of process and failure to state a claim upon which relief can be granted. ECF No. 26. The magistrate judge agreed and recommended dismissal under Federal Rule of Civil Procedure 12(b)(6) because Ballout failed to satisfy the elements of any of his claimed causes of action. *See, generally, id*.

## III. Analysis

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). *De novo* review requires at least a review of the evidence before the magistrate judge; the Court may not act solely based on a magistrate judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the magistrate judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are

dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Arn*, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . .that are at the heart of the parties' dispute."). Each objection to the magistrate judge's recommendation should include how the analysis is wrong, why it was wrong, and how *de novo* review will obtain a different result on that particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them and runs contrary to the purposes of the Magistrate's Act." *Id*. A general objection, or one that merely restates the arguments previously presented and addressed by the magistrate judge, does not sufficiently identify alleged errors in the report and recommendation. *Id*. When an objection merely reiterates the arguments presented to the magistrate judge, the report and recommendation should be reviewed for clear error. *Verdone v. Comm'r of Soc. Sec.*, 2018 WL 1516918, at *2 (E.D. Mich. Mar. 28, 2018) (citing *Ramirez v. United States*,

898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012)); *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017).

**B. Discussion**

Ballout filed six objections to the R&R. ECF No. 34.

1. Objections 1–4

Although Ballout separates his principal quarrel with the R&R into four separate objections, the Court will address those objections together as they fundamentally assert a single challenge—that the R&R did not properly consider the headline of the Article. Specifically, Ballout argues that the R&R failed to consider the phrase "Fake Energy Company" in determining that Ballout's allegations could not support a claim for defamation.

Ballout first contends that the magistrate judge erred by not conducting a close comparison of the title to the body of the Article. He argues that the statutory fair reporting privilege only applies to headings that are a fair and true headnote of the report, thereby mandating such a comparison of the title to the body. *See* M.C.L. § 600.2911(3). First, Ballout

cites no authority[1] nor could the Court find any that requires such an exercise. Indeed, such a practice would undermine "the venerable principle that to test its libelous quality, a publication is to be considered as a whole, including the character and display of its headlines when the article is published in a newspaper." *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 126 (Mich. 1991) (quoting *Sanders v. Evening News Ass'n*, 21 N.W.2d 152, 154 (Mich. 1946)) (cleaned up); *accord Croce v. New York Times*, 930 F.3d 787, 793–94 (6th Cir. 2019) ("Considering headlines alongside their accompanying articles, rather than in isolation, makes sense because headlines are often a spin put on facts to get the attention of the reader that distorts their true meaning.") (applying Ohio law). To the extent that the R&R did not address the Article's headline separately or contrast the language of the headline from the language of the body of the Article, the Court finds no error. Ballout's first objection is rejected.

Ballout's second and third objection challenge the Article's fidelity to the public record about which it reported. As the R&R reflects, a verbatim

---

[1] Ballout cites to *Bedford v. Witte*, 896 N.W.2d 69 (Mich. 2016), as authority for such a requirement, but that case only requires that the report itself be a "fair and true" account of matters in the public record for the fair-reporting privilege to apply. It does not address consistency between a title and the body of a reported article.

recitation of the public record is not required for the fair reporting privilege to apply. *See Koniak v. Heritage Newspapers, Inc.*, 476 N.W.2d 447, 450 (Mich. Ct. App. 1991). Provided the information published substantially represents the matter contained within the subject court records, the privilege applies. *Id*. Where the "gist" or "sting" of the article is substantially true, it meets the statutory "fair and true" standard and remains protected by the fair reporting privilege. *See id*.

The R&R specifically resolved that the Article's use of the word "fake" among others, was consistent with the Florida's Court's findings that Ballout's SEC violations involved fraud, deceit, or manipulation. ECF No. 26-4, PageID.422 (Ballout's two violations, demonstrating participation in a fraudulent scheme, multiple material misstatements or misleading omissions and/or fraudulent or deceptive acts, warranted maximum civil penalty).

Ballout resists this conclusion by arguing that nothing in the Florida Court's findings and rulings suggested that Enerkon was a fictitious corporation. Ballout's argument that the Article indicates or implies otherwise assumes that the word "Fake" in the headline modifies only the phrase directly following it, "Energy Company." Although the headline,

"Fake Energy Company Stock Scheme Yields Civil Penalties to SEC," could mean what Ballout alleges it means—that the entire corporation was a sham, the word "Fake" could also modify the phrase "Stock Scheme," not "Energy Company."[2] *See* ECF No. 8.

Whether "Fake" modifies "Energy Company," suggesting that Enerkon was an illegitimate business, or it modifies the energy company's "Stock Scheme," the gist and sting of the Article remain the same. Under any reading of the entire Article, the substance of it clearly reports that the Florida Court imposed civil penalties on Ballout for his fraudulent conduct. The Article refers to Ballout's actions as a "pump-and-dump" scheme,[3] as does the Florida Court, which makes a finding of fact in its final judgment

---

[2] Newspaper headlines are notorious for syntactic ambiguities from misplaced modifiers. *See, e.g.*, "Louisville Might Rename Papa John's Cardinal Stadium After Racial Slur" (Reuters [2018]); "Jails for Women in Need of Face Lift" (Daily Record [Morristown, NJ, 1989]); "Police Kill Man with TV Tuner" (The Blade-Tribune [Oceanside, CA, 1986]; "Sisters Reunited after 18 Years in Checkout Line at Supermarket" (Arkansas Democrat) [1983].

[3] A "pump-and-dump" scheme is a common type of securities fraud in which a shareholding director or officer makes false or misleading reports relating to the corporation's business to artificially inflate the price of the company's shares—the "pump," then sells his own holdings for a profit—the "dump, causing investor loss when the price subsequently collapses due to lack of demand. *See* https://www.investor.gov/introduction-investing/investing-basics/glossary/pump-and-dump-schemes.

that the case arises from "an unlawful 'pump-and-dump' scheme." *Compare* ECF No. 8, *with* ECF No. 26-4, PageID.411.

Ballout objects to the R&R's conclusion that the Article was faithful to the Florida Court record, and that the Article headline's use of the phrase "Fake Energy Company" was thereby justified. The R&R noted that the Florida Court's use of the word "purported" in connection with Enerkon's involvement with power plants suggested that it agreed with the SEC's allegation that Enerkon, with no employees or legitimate business operations, was a sham. ECF No. 33, PageID.568.

Ballout argues that the Florida Court's use of the phrase "purportedly involved in power plants" does not signal its agreement with the SEC allegations that the entire entity was a sham. This argument overlooks the fact that the Florida Court specifically deemed the material facts set forth by the SEC as admitted due to defendants' failure to provide any evidence contravening those facts. *See* ECF No. 26-3, PageID.399–400. The Florida Court's explicit acceptance of the SEC's statement of facts, more so than its use of the word "purported," suggests the court's agreement with the allegations, and justifies the Article's use of the word "Fake" in connection to Enerkon's status as an energy company. Additionally, the Florida Court's

order further bolstered its "agreement" with SEC allegations that Enerkon was a sham corporation by noting that its corporate bank account statements never reflected more than $500.00 in cash and that Ballout admitted that it generally had less than $1,000 in cash between 2018 and 2022. ECF No. 26-3, PageID.401. In sum, the Court finds no error in the R&R's conclusion that the gist of the Article, including the use of the word "Fake" in its headline, substantially represented the matter contained within the subject court records.

Moreover, the "sting" of a headline or article suggesting that Enerkon was a bogus entity would be no more wounding than the actual contents of the Florida Court's order and judgment. The order and judgment find that:

- Ballout orchestrated a "pump-and-dump" scheme
- Ballout's misrepresentations were egregious and recurrent
- Ballout's misconduct was done with "a high degree of scienter," i.e., actual knowledge of falsity and/or an intent to deceive
- Ballout is manifestly unfit to serve as an officer or director of a public company because he repeatedly and egregiously abused his position of trust with scienter and has refused to admit any wrongdoing

- Ballout's violations involved fraud, deceit, manipulation, or deliberate or reckless disregard for regulatory authority
- Ballout's conduct warranted the maximum civil penalty, which is intended to punish the wrongdoer and deter him and others from future violations, for two of his violations because they involved fraud, deceit, manipulation or deliberate or reckless disregard for regulatory authority

*See, generally*, ECF Nos. 26-3, 26-4.

Notwithstanding these censorious findings, Ballout argues that the additional accusation supplied by the word "Fake" in the headline sullies his "professional legitimacy" by adding certainty and altering the effect of the Florida Court record. The Court rejects Ballout's argument that the phrase "Fake Energy Company" deals a more devastating blow to his reputation than the Florida Court's findings that he is "manifestly unfit to serve as an officer or director" based on his egregious and repeated abuse of trust and knowing or intentional fraud, deceit, or manipulation. *See* ECF No. 26-4. Indeed, if the "sting" of a publication has the same effect on a reader as the literal truth, minor differences between the two are deemed immaterial, the publication is substantially accurate, and the fair reporting privilege protects

the defendant from liability. *See Hawkins v. Mercy Health Srvcs., Inc.*, 583 N.W.2d 725, 733–34 (Mich. Ct. App. 1998). If anything, here, the emphatic language of the literal record, i.e., *manifestly* unfit, *egregious* abuse of trust, fraud, deceit, manipulation, fabrication, supplies a "materially harsher" impact than the use of the comparatively bland word "Fake" in the Article's headline. *See* ECF No. 34, PageID.600. Accordingly, the Court overrules Ballout's second and third objection.

Ballout next objects to the R&R's alternate conclusion that the phrase "Fake Energy Company" is mere rhetorical hyperbole, as opposed to a factual classification, and thus cannot serve as the basis for a defamation claim. *See* ECF No. 33, PageID.568 (citing *Lento Law Grp., P.C. v. Lewis*, 2024 WL 2963775, *2 (E.D. Mich. June 11, 2024)). Ballout argues that "Fake Energy Company" appearing in a Bloomberg Law report headline would permit a reasonable reader to understand it as a factual classification. The Court disagrees.

The relevant inquiry is whether the challenged language would be understood by a reasonable reader to declare or imply provable assertions of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22 (1990). Loose, figurative, or hyperbolic language is generally not susceptible to

proof. *See id*. Certain words and phrases are subject to too many interpretations or are too imprecise to be proven as true or false. *See Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728–30 (1st Cir. 1992). In *Phantom*, the First Circuit determined that the adjectives "fake" and "phony" permit "numerous interpretations," and thus are "incapable of being proven true or false." *Id*. at 728 (internal quotation omitted).

The use of the word "Fake" in the Article's headline carries the same lack of precision as the First Circuit found it to have in *Phantom*. As discussed in detail above, it is not clear which of the four nouns preceding the adjective "Fake" is modified. The headline could be read to mean that Enerkon's business concerned fake (non-existent or artificial) energy, that Enerkon itself was fake (did not exist or was pretense), that the stock was fake (counterfeit, simulated, or lacking integrity), or that the scheme was fake (fictitious or feigned). "Fake," as used in the Article's headline, is as nebulous a term as it was in *Phantom* and thus cannot be read as asserting fact. Accordingly, the Court finds no error in the R&R finding that the

Article's use of the word "Fake" in the Article's headline did not make the Article actionable.[4]

2. Objection Five

Ballout objects to the R&R's failure to separately analyze his claim for defamation by implication. The Court finds that the magistrate judge did not err in omitting such analysis from the R&R because Ballout did not plead a claim for defamation by implication in his complaint. *See Collins v. Detroit Free Press*, 627 N.W.2d 5, 10 n.3 (Mich. Ct. App. 2001); *Rhoads v. Baker College*, 2008 WL 4648972, at *5 (Mich. Ct. App. Oct. 21, 2008). Nor do the alleged facts in his complaint hint at a separate defamation by implication claim.

Even if Ballout had pleaded defamation by implication, a published article is only actionable if any defamatory implication arising from it is materially false. *Rhoads*, 2008 WL 4648972, at *5. As discussed in the previous section, the Article was supported by the record in the Florida Court and is thus substantially true. The substantial truth defense applies to

[4] To the extent "fake" could be proven true or false, as already discussed, the Court finds the assessment of either Enerkon or its stock as fake is supported by the facts laid out in the Florida Court record and thus are substantially true.

defamatory implications just as it does to defamatory statements. *Collins*, 627 N.W.2d at 10 n.3 (citing *Hawkins,* 583 N.W.2d at 734). If the gist or the sting of defamatory implications is substantially accurate, the defendant cannot be liable for defamation. *See Hawkins*, 583 N.W.2d at 734 (citing *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767–68 (Mich. Ct. App. 1987)). The Court overrules Ballout's fifth objection.

3. Objection 6

Ballout's final objection challenges the R&R's failure to address his request for leave to amend his complaint to cure its deficiencies. The Court acknowledges that the R&R does not address leave to amend the complaint. Nevertheless, the Court finds that this oversight was harmless because amendment here would be futile.

A dismissal for failure to state a claim under Rule 12(b)(6) is a judgment on the merits and is therefore done with prejudice. *Pratt v. Ventas, Inc*., 365 F.3d 514, 522 (6th Cir. 2004). Although Ballout does not provide a proposed amended complaint, he describes how he would attempt to cure the defects put forward by defendants' motion. *See* ECF No. 34, PageID.604. None of the proposed amendments would rectify the existing complaint's failure to state a plausible legal claim. Indeed, the

Court cannot imagine an amendment that would correct this failure to state a plausible legal claim, rendering leave to amend futile. Accordingly, Ballout's sixth objection is overruled.

## IV. Conclusion

For these reasons, the Court **OVERRULES** Ballout's objections (ECF No. 34), **ADOPTS** the R&R (ECF No. 33), and **GRANTS** defendants' motion to dismiss (ECF No. 26). Ballout's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: September 23, 2026